# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONNA GARCIA,<br><br>Plaintiff,<br><br>vs.<br><br>RESURGENT CAPITAL FINANCIAL SERVICES, INC., LVNV FUNDING, LLC, THE BRACHFELD LAW GROUP, P.C., et al.,<br><br>Defendants. | ) No. 11-01253 EMC |

VOLUME I

DEPOSITION OF THE BRACHFELD LAW GROUP, PC'S CORPORATE

DESIGNEE PURSUANT TO FRCP 30(B)(6)

(JONATHAN BIRDT, ESQ.)

Toluca Lake, California

Tuesday, November 1, 2011

REPORTED BY:

KRISTIN L. MATTSEN
CSR NO. 12897

JOB NO.
68357WIL/A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DONNA GARCIA,

Plaintiff,

vs.

RESURGENT CAPITAL FINANCIAL SERVICES, INC., LVNV FUNDING, LLC, THE BRACHFELD LAW GROUP, P.C., et al.,

Defendants.

No. 11-01253 EMC

Deposition of THE BRACHFELD LAW GROUP, PC'S CORPORATE DESIGNEE PURSUANT TO FRCP 30(B)(6) (JONATHAN BIRDT, ESQ.), VOLUME I, taken on behalf of the Plaintiff, at 10868 Kling Street, Toluca Lake, California, commencing at 8:44 a.m., on Tuesday, November 1, 2011, before Kristin L. Mattsen, CSR No. 12897, a Certified Shorthand Reporter in and for the County of Los Angeles, State of California.

of work other than work that's directed towards attempting to collect debts?

A No.

Q Who is Resurgent Financial?

A Other than a client of The Brachfeld Law Group, I don't know.

Q Do you also know them as Resurgent Capital?

A I know them as Resurgent. I don't know what the various entities are.

Q Does Brachfeld Law Group collect or attempt to collect debts for Resurgent?

A I'm not sure if it's the Resurgent name used in litigation or not. I'm not involved in collection activities.

Q I'm not asking whether you're personally involved, Mr. Birdt. As the corporate designee, I'm asking you does Brachfeld Law Group attempt to collect debts for Resurgent?

A Yes.

Q Does Brachfeld Law Group attempt to collect debts for LVNV Funding?

A Yes.

Q I take it these are consumer debts, not --

THE REPORTER: "Not" -- can you repeat that, Counsel.

fourth paragraph after you wrote the sentence -- the first sentence, you then wrote, "I wrote a letter to them again explaining that this is not my bill, that it is probably my ex-husband's." When you wrote that it was -- that the bill was probably your ex-husband's, was that -- what was that based on? Why did you conclude that?

A. I believed the bill not to be mine. When I spoke with Ventus the first time, I spoke with Pat Young. I told her it wasn't mine. I told her I believed it was my ex-husband's, that he had bought solar paneling and siding. She said siding or something. Prior in this conversation I had asked, "What is this for? And do you have my signature on anything?" And she said, "No." That was when I went on about my ex-husband.

Q. If you turn -- excuse me. If you turn to the second page of Exhibit 3, the first sentence you wrote there -- and, for the record, it's Exhibit 3, and this second page of Exhibit 3 is Garcia 8. The paragraph begins, "Both my current husband and I have received numerous phone calls about this bill." At the time that you wrote that in September 2006, was that accurate; you had started receiving phone calls?

A. Correct.



Q Do you see the date in the upper left-hand corner, December 10th, 2006?

A I do.

Q Is this the letter that you're indicating Brachfeld does not dispute receiving from Ms. Garcia?

A I believe it is.

Q And how do you know that Brachfeld received this letter?

A Our business records show that on December 14th, we received a dispute letter and placed the account -- an account on a hold status.

Q Why was the account placed on a hold status?

A Because that's the procedure we discussed before. Any time there's a dispute, refusal to pay, or cease and desist, we place the account on a hold status until the matter is appropriately investigated.

Q I see that Garcia -51 appears to be a continuation of this December 10th, 2006 letter. Is that a fair representation?

A It does appear to be, yes.

Q What other letters were received with this document?

A I don't know.

Q So does Brachfeld note this account as having received the cease-and-desist letter after receiving the

Q And you received a letter from Ms. Garcia, saying she was not going to pay; isn't that correct?
A On the other account.
Q The question is did you receive a letter from Ms. Garcia, saying she was not going to pay; yes or no?
A In December of 2006, we received a refusal to pay from Ms. Garcia on the account related to her ex-husband's aluminum siding.
Q Ms. Garcia sent you a letter, saying she was not going to pay on the account you were attempting to collect on; isn't that correct?
A No.
Q You did receive Ms. Garcia's letter dated December 10th, 2006; isn't that correct?
A Yes.
Q What does -- looking at the top of the letter, you see the regarding section says "Sears LVNV Funding LLC"; isn't that right?
A Yes.
Q And you were attempting to collect a debt for Sears "LVN" Funding LLC; isn't that right?
A Yes.
Q Below that, it says "File #MLN03755." What does that refer to?
A That refers to the account related to the

freezer your client purchased in 2004.

Q And that is the account you were attempting to collect on; correct?

A MLN03755? Yes.

Q Mr. Birdt, looking back at Garcia No. -128, do you see the letter dated February 11th, 2011, from Ms. Garcia to Brachfeld?

A Yes.

Q Did Brachfeld receive that letter?

A Yes.

Q And that letter also says "RE: Sears LVNV Funding LLC"?

A Yes.

Q And that letter says that she refuses to pay the debt; is that right?

A This letter says she refused to pay the debt incurred by her husband for the siding on his house.

Q What action did Brachfeld take after receiving this letter?

A We placed the account on a protected status and then promptly thereafter closed it.

Q Why did you close it?

A I don't know.

Q Isn't it true to say that you have indicated previously that you closed the account because you

received a cease-and-desist letter and therefore closed the account?

A I don't know.

You're looking at me like you didn't hear me, and there's a great deal of background coming through your speaker.

Q I'm sorry, Mr. Birdt. I can't hear you.

A There's a problem with your computer. We've -- I think it's solved now.

My answer was I don't know, I think.

THE REPORTER: Yes.

BY MR. WILCOX:

Q And -- and in the regarding section, Ms. Garcia wrote in this letter to Brachfeld "File #MLN03755"; isn't that correct?

A And then she refers to her ex-husband's account and the divorce.

Q So you knew Ms. Garcia was sending a letter regarding MLN03755; correct?

A No.

Q So according to Brachfeld's policy, then, it would have been acceptable to continue to collect on this account from Ms. Garcia?

A In this case, upon receipt of the letter, pursuant to our policy, it was immediately placed in a

hold status on a protected desk and the cease and desist was honored until we were instructed by our client to close the file, which we did.

Q When Brachfeld received the December 10th, 2006 letter, did it report that to Resurgent?

A I believe we did.

Q Did Resurgent give Brachfeld any instructions to cease collecting?

A We were instructed to close the file.

Q Was the file closed?

A Yes. On January 28th, 2007.

Q How do you know that?

A By reviewing our business records previously provided to you.

Q Looking back, then, at Exhibit 4, if you look at the Bates stamp E-mails -9, are these the business records known as the paperless file that you've referred to?

A Your first page on page -9, the margins are cut off, so I don't know what else is cut off, but this is the document I'm referring to. Well, no. No, it's not. Hold on. I think this is the LVNV, so there's two sets.

Stand by.

Starting on page -30 appears to be at least a more correct, vertically, representation of our

A What letter?

Q Mr. Birdt, Brachfeld received a letter from Ms. Garcia on December 10 -- approximately December 10th, 2006; isn't that right?

A December 14th, yes.

Q And there was an investigation made into that letter; yes?

A I don't know.

Q And the conclusion of the investigation was to close the file; correct?

A I don't know if there was an investigation. The file was closed.

Q The SOP would have been to forward that letter to Resurgent; yes?

A Yes.

Q And the "SOP" means "standard operating procedure"?

A Our custom and practice would have been to forward it. I don't know if there was specifically an SOP on that point at that time.

Q And you have no reason to believe why that letter would not have been forwarded?

A Correct.

Q When Resurgent responds to Brachfeld regarding what action it takes in regard --

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF CALIFORNIA
SAN JOSÉ DIVISION

DONNA GARCIA,

Plaintiff, C.A. No. 11-01253 EMC

vs.

RESURGENT CAPITAL FINANCIAL SERVICES, INC.; LVNV FUNDING, LLC; THE BRACHFELD LAW GROUP, P.C., ET AL.,

Defendants.

VIDEOTAPED
DEPOSITION OF: JEAN PAUL TORRES
DATE: November 9, 2011
TIME: 11:10 a.m.
LOCATION: A. WILLIAM ROBERTS, JR. & ASSOCIATES
1200 Woodruff Road, Suite A-3
Greenville, South Carolina
TAKEN BY: Counsel for Plaintiff
REPORTED BY: KATHY P. TAYLOR,
Registered Professional Reporter

---

A. WILLIAM ROBERTS, JR. & ASSOCIATES
Fast, Accurate & Friendly

Charleston, SC (843) 722-8414
Hilton Head, SC (843) 785-3263
Myrtle Beach, SC (843) 839-3376

Columbia, SC (803) 731-5224
Greenville, SC (864)234-7030
Charlotte, NC (704) 573-3919

APPEARANCES OF COUNSEL

ATTORNEYS FOR PLAINTIFF
DONNA GARCIA (appearing via videoconference):

LAW OFFICES OF RONALD WILCOX
BY: RONALD WILCOX
1900 The Alameda, Suite 530
San José, CA 95126
(408) 296-0400
ronaldwilcox@post.harvard.edu

ATTORNEYS FOR DEFENDANTS
RESURGENT CAPITAL FINANCIAL SERVICES, INC.; LVNV FUNDING, LLC:

HINSHAW & CULBERTSON, LLP
BY: NABIL G. FOSTER
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
(312) 704-3000
nfoster@hinshawlaw.com

(Index at rear of transcript)

MR. WILCOX: Okay. It's 9:10 California time. It should be 11:10 a.m. on the East Coast in South Carolina, Greenville. This is the case of Donna Garcia versus Resurgent Capital Services and LVNV, LLC, and the Brachfeld Law Group, PC, Case Number 11-01253 EMC. We are here for the deposition of Resurgent Capital Services, LP corporate designee. We're being videotaped and audiotaped at all times unless noted to go off the record.

Would all present please identify themselves, beginning with the witness.

MR. TORRES: Jean Paul Torres.

MR. FOSTER: Nabil Fos-...

MR. WILCOX: Anybody else?

MR. FOSTER: And Nabil Foster.

MR. WILCOX: Okay. Anyone else in the room?

MR. FOSTER: No one else here in the room, although, Mr. Wilcox, what about the representative for Brachfeld & Associates; they're not here in the room, and are they there in your office? Did you give them notice of the deposition?

MR. WILCOX: They've received notice of the deposition. They had sent an e-mail earlier in this case, maybe six or so weeks ago, stating that they

were not going to be participating in depositions. No one has called me this morning to say they were going to participate in the deposition, so my suspicion is they -- as they have before in the other depositions in South Carolina, they're simply not going to appear.

MR. FOSTER: Okay. That's fine. Just wanted to make sure the -- we knew where they were if they didn't want to be here. So...

MR. WILCOX: Thank you. And I'll just note for the record that I just telephoned Mr. Dalby in San Francisco, and he indicated that he's not going to appear by telephone either.

MR. FOSTER: All right. Mr. Wilcox...

MR. WILCOX: Okay.

MR. FOSTER: Mr. Wilcox, before you start getting going, I wanted to let you know that Mr. Torres here, he -- he's here as the corporate representative of -- of Resurgent, but he's also going to be the corporate representative for LVNV. So for the sake of time, if you want to try to move things along, we can -- we can accomplish, you know, two things at once in terms of getting answers to questions on behalf of the two entities. Because I know you had two deposition notices, but I don't know

if you want to go through the hassle of asking the same question twice.

MR. WILCOX: Very good. I'll proceed as if we're going through one -- one deposition here for both entities.

Mister -- Mr. Torres, do you understand that you're the corporate designee this morning for both Resurgent Capital Services and LVNV Funding?

MR. TORRES: Yes. I do.

MR. WILCOX: Okay. Very good. Madam Court Reporter, could you please swear in the witness.

JEAN PAUL TORRES,

Being first duly sworn, testified as follows:

EXAMINATION

BY MR. WILCOX:

Q. Hi, Mr. Torres. Good morning.

A. Good morning.

Q. We were just chatting before you got sworn in, so I just want to make sure we're -- we're clear. Is it your understanding that you are the corporate designee this morning for both Resurgent Capital Services and LVNV Funding?

A. Yes.

Q. Okay. Very good. What is your date of birth?

offices.

Q. Does LVNV Funding have any employees?

A. No.

Q. What is your understanding of the relationship between LVNV Funding and Resurgent Capital?

A. LVNV Funding is basically an asset-holding entity, and Resurgent Capital manages all of that on behalf of LVNV Funding.

Q. Are both of the companies managed from the South Main Street office in Greenville?

MR. FOSTER: Object to the form of the question.

A. Resurgent is managed from that address.

BY MR. WILCOX:

Q. I'm sorry, Mr. Torres. Can you repeat that? You faded in and out.

A. Yeah. I'm sorry. There was static.

Resurgent and -- I'm sorry. Resurgent is managed at that address. And LVNV Funding, everything is handled through that address.

Q. When you say everything is handled, what do you mean?

A. All the departments that are owned by LVNV, Resurgent manages them; Resurgent places them with

as the date the account was opened, the date of last payment, the date of -- of the charge-off, things like that.

Q. When the -- when LVNV is -- acquires the account, do they acquire the original cardholder agreement?

A. Usually, no.

Q. When they -- when LVNV acquires the original -- or when LVNV acquires the account, do they acquire the monthly billing statements?

A. Usually not.

Q. When LVNV acquires the account, do they acquire the point-of-sales ticket item showing individual transactions?

A. No. Usually not.

Q. When LVNV acquired this account relating to Donna Garcia, were any of those three items that you just spoke about acquired in the original acquisition?

A. To my knowledge, no.

Q. So as I understand it, LVNV then places the account with Ventus Capital to attempt to collect; is that right?

A. No. This was placed with Resurgent Capital, who then placed it with Ventus.

THE COURT REPORTER: It's been marked.

BY MR. WILCOX:

Q. Okay. Mr. Torres, do you now have -- now have in front of you what was marked as Exhibit 2?

A. I do.

Q. And if you'd take a look at the Bates-stamped page Garcia 34 in the bottom right corner.

A. I have it.

Q. Is that the CitiCard letter that you saw in the OnBase system?

A. Yes. It is.

Q. And this letter is dated April 4th, 2006?

A. Correct.

Q. From Donna Garcia, CitiCard?

A. Correct.

Q. Going a little further into the packet here of Exhibit 2, could you please take a look at Garcia 42.

A. Okay.

Q. And is that a letter dated September 27th, 2006, from Ms. Garcia to Sears Credit Card Services?

A. Yes. That is correct.

Q. Is that the letter that you saw in the OnBase system?

A. Yes.

Q. Looking back at Exhibit 1, R-72, there is a note entry above where we were just looking, which seems to say "critical notes". And it's hard to read. Again, it's kind of blacked out. But can you read that?

A. Which date were you referring to?

Q. Well, it appears to be just above the upper October 19th, '06, date entry.

A. The one that says: Customer service seller written in cease and desist received?

Q. Yeah. So is it -- is that a note that's made by a T. Thomas on October 19th, '06, at 1:20 p.m.?

A. That is correct. Underneath, it simply says: No note.

Q. Okay. Do you know why it says: No note?

A. Because the document is in OnBase. So someone can click on OnBase, look at the document, and -- and see what it is.

Q. Okay. So did you hit F7 and look into OnBase to see what letter was attached to -- to this October 19th, '06, 1:20 p.m. note by T. Thomas?

A. Yes. I did.

Q. And what letter was attached?

this, I look at basically everything we have available regarding the account.

Q. Looking at the note entry just above on Exhibit 1, R-72, it seems to say: Customer-service agency, parenthesis, outside and legal, close parenthesis, written in cease and desist received, and a note entry of October 25th, 2006, at 10:48 a -- a.m. by L. Cappiello.

Do you see that there?

A. I do.

Q. So that note entry is a little bit different in wording than the ones that were below. What does it mean when it says: Outside and legal?

A. In this case, it means we received something from our legal collection agency, being Brachfeld.

Q. So -- excuse me. When you looked in the OnBase system, did you see the letter that you received from Brachfeld on October 25th, '06?

A. Yes. I did.

Q. Can you describe that letter for us, please.

A. Well, we have a copy of it in the exhibit.

Q. I'm sorry, Mr. Torres. You broke up.

A. I said it looks like we have a copy of it