United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA GARCIA,<br><br>        Plaintiff,<br><br>        v.<br><br>RESURGENT CAPITAL SERVICES, LP, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-11-1253 EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 79, 80)** |

## I.  INTRODUCTION

Plaintiff Donna Garcia filed suit against Brachfeld Law Group, Resurgent Capital Services, and LVNV Funding, in response to Defendants' efforts to collect on a debt between 2004 and 2011. Plaintiff alleges: (1) violation of the Rosenthal Fair Debt Collection Practices Act (California Civil Code § 1788 *et seq.*); (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; (3) intrusion upon seclusion; and (4) negligence.  Complaint ("Compl.").  Plaintiff sought compensatory, statutory, and punitive damages, as well as attorney's fees and costs.  *Id.*  Pending before the Court are Defendants' motions for summary judgment.  Docket Nos. 79, 80.[1]  Having considered the parties' submissions and oral argument, and for the reasons set forth below, the Court **DENIES** the motions.

---

[1] Defendants LVNV and Resurgent have adopted Defendant Brachfeld's motion for summary judgment with little additional analysis.  *See* Docket No. 80.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff began receiving communications from non-party Ventus Capital on behalf of Defendant LVNV Funding on March 30, 2006. Garcia Decl. Ex. 1. Ventus attempted to collect a debt purportedly arising from a Sears purchase in May of 1983 for $921.83. *Id.* Based on the letter and subsequent calls, Plaintiff believed that the debt belonged to her ex-husband for a charge he incurred subsequent to their divorce to purchase aluminum siding. Garcia Decl. ¶¶ 5-6. Ventus was unable to provide any information about the debt so as to verify that it was valid and belonging to Plaintiff, so Plaintiff disputed the charge. *Id.* Defendant LVNV then placed the debt with various debt collectors who contacted Plaintiff throughout 2006. Garcia Decl. ¶¶ 8-10, Exs. 1-10. Plaintiff sent letters in response to these communications disputing the debt and stating that she would not pay it. *Id.* Exs. 1-10. On December 5, 2006, Plaintiff received a letter from Defendant Brachfeld regarding the same charge, also listing the $921.83 due and the file number MLN03755. *Id.* ¶¶ 10, 14, Ex. 9. Plaintiff responded with a letter detailing her efforts to dispute this charge, stating that it was not her debt, and threatening legal action if the matter was not resolved. *Id.* Ex. 10. Brachfeld received that letter and placed her account on a hold status. Wilcox Decl., Ex. 1 (Birdt Depo.), at 66. On March 3, 2007, Plaintiff received a call from Brachfeld again regarding the charge. *Id.* ¶ 16, Ex. 11. She sent another letter in response to that call, again threatening legal action and stating that she would not pay the debt. *Id.* Ex. 11. It is undisputed that the correspondence between the parties pertained to the same debt – $921.83 due, file number MLN03755.

After that March 2007 communication to Defendant Brachfeld, the record contains no evidence of any phone calls or letters regarding the alleged debt until November 2010, at which time Plaintiff began receiving more calls from Defendant Brachfeld. *Id.* ¶ 17, Exs. 14-15. Brachfeld contends these calls in 2010 were not in reference to the same debt that was the subject of the prior communications in 2006 and 2007. However, Brachfeld's internal documents do in fact refer to the same debt in 2006-07 as in 2010-11, with the same principal amount due. Wilcox Decl. Ex. 8. There is no evidence that different debts were involved.

From November 2010 to February 2011, Defendants called Plaintiff over 40 times and left numerous messages. *Id.* ¶¶ 17-19. Brachfeld's call records indicate 51 calls during that time.

Wilcox Decl., Ex. 7 (Leraris Depo.), at 75-76, 123. On some occasions, defendants called multiple times in one day and called back after Plaintiff had hung up. Garcia Decl. ¶ 20. Plaintiff sent another letter to Brachfeld in 2011 again disputing the debt, which she referred to as the same debt for which she had received calls and letters from 2006-07. *Id.* Ex. 15.

When Plaintiff prepared for her deposition in this matter, she discovered a Sears receipt for a freezer purchased in 2004 on her personal Sears charge card. *Id*. ¶ 22. The parties dispute whether any of Defendants' calls (from 2006-07 or 2010-11) were in reference to the 2004 freezer as distinct from the 1983 debt Plaintiff believes was incurred by her ex-husband. *Id*. Defendants have not produced any receipts or evidence showing that Plaintiff owes a debt from the freezer purchase, and Plaintiff does not recall receiving a bill for the freezer or any other indication that she had not paid it. She typically makes purchases on her charge card and makes payments in lump sum. *Id*.

### III. DISCUSSION

A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be rendered on a claim or defense, or part of a claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where the plaintiff has the ultimate burden of proof, he or she may prevail on a motion for summary judgment only if he or she affirmatively demonstrates that there is no genuine dispute as to every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992). In contrast, where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment by demonstrating the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's]

3

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party possesses the initial burden of showing the absence of a genuine issue of fact. *See Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir.1980).

B. <u>FDCPA & Rosenthal Act Claims</u>

1. <u>The Nature of the Debt</u>

The gravamen of Defendants' motion is that there was confusion over whether the alleged debt in question stems from aluminum siding purchased by Plaintiff's ex-husband or from a freezer Plaintiff herself purchased in 2004. Plaintiff's complaint described a debt she believed to belong to her ex-husband, for which she claimed Defendants unlawfully harassed her. Defendants appear to contend that because the record now demonstrates, according to Defendants, that the debt stems from Plaintiff's own freezer purchase, her complaint is now moot, and her suit cannot survive summary judgment.

Defendants' argument is a red herring for two reasons. First, whether the debt stems from Ms. Garcia's purchase of a freezer in 2004 or her ex-husband's siding purchase in 1983 (or something else entirely), Brachfeld's paperless notes confirm that the debt in question and which has been the subject of the parties' correspondence has always been the same, a Sears purchase of $921.83, with the Resurgent File number of MLN03755, and a reference number described as "Your File #" of 4883458245052. Wilcox Decl., Ex. 8. Brachfeld's call records from 2006-07 and from 2010-11 contain the same exact amount due and the same "Your File #" number. *Id.* In addition, Plaintiff's communications have consistently referred to the same Resurgent file number of MLN03755, which matches Brachfeld's records. Garcia Decl. Exs. 10, 11, 15. Thus, Plaintiff has consistently described one particular debt, and Defendants' conduct related to such debt, which forms the basis of her legal claims. Defendants' claim that two different debts have been at issue at two different times is unsupported by any admissible evidence in the record. *See* Reply at 2.

Since the evidence indicates that only one debt has been at issue, the actual source of that debt (whether it is siding or a freezer) is immaterial to the legal claims asserted. As Plaintiff points out, whether a consumer owes a particular debt is generally not pertinent to claims under the FDCPA, as "[t]he Act is designed to protect consumers who have been victimized by unscrupulous

debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). Indeed, referring to the particular claims Defendants challenge in their summary judgment motion, whether Defendants have violated a cease and desist order under § 1692c(c) or made harassing calls under § 1692d(5) does not depend on whether a plaintiff actually owes the debt in question. The pertinent fact is that Defendants have allegedly contacted her about said debt repeatedly, despite her demands that they cease and desist such collection efforts, in violation of state and federal law. Whether such contact was regarding a debt originally stemming from the purchase of a freezer or aluminum siding is immaterial. Plaintiff's recitation of the source of the debt in her complaint is likewise immaterial to her legal claims.

Second, even if the source of the debt were relevant to any of Plaintiff's claims (or to the continued applicability of Plaintiff's complaint), Defendants have offered no evidence in the record to demonstrate that the debt in fact stemmed from Plaintiff's freezer purchase rather than her ex-husband's siding purchase. Instead, the documentary evidence in the record suggests the contrary. Plaintiff's initial contact with LVNV's non-party debt collectors referenced a 1983 Sears purchase, and Plaintiff alleges one of Defendant's agents mentioned siding in a 2006 phone call about the debt. *See* Garcia Decl. ¶¶ 5-6, Exs. 1, 3. While subsequent communications from Brachfeld do not reference the year 1983 as the date of purchase (no date is provided), they do reference the identical file number and the identical amount due – down to the penny – as the previous collection letters. *See* Garcia Decl. Ex. 9. Similarly, Brachfeld's internal documents list the same file number and amount due. Wilcox Decl. Ex. 8. Thus, the evidence in the record supports Plaintiff's initial belief that the debt in question stemmed from a purchase her ex-husband made in 1983, for which she was not responsible.

By contrast, no evidence in the record supports Brachfeld's contention that the debt stems from Plaintiff's freezer purchase in 2004. While Mr. Birdt states in his declaration that Brachfeld was hired to collect a debt from Plaintiff's freezer purchase, Birdt Decl. ¶ 7, he provides no documentary basis for his purported knowledge of this fact; it is undisputed that Defendants have not provided Plaintiff with any proof or documentation of the nature and source of her alleged debt

1  (indeed, the lack of such information is responsible for the current misunderstanding).[2]  Defendants
2  include Plaintiff's receipt for the freezer in the record, which she produced.  *See* Birdt Decl., Docket
3  No. 79, Ex. C.  However, the purchase amount for the freezer does not match the amount due on any
4  of Defendants' communications to Plaintiff, or any of Defendants' internal files.  Nor do any
5  account or file numbers listed on the freezer receipt appear to match any reference numbers listed in
6  Defendants' collection efforts.  Moreover, Defendants have produced no evidence that Plaintiff has
7  not paid for the freezer.  Although they contend – without producing the actual deposition transcript
8  – that Plaintiff admitted she did not recall paying for the freezer, there is no actual admission in the
9  record or other evidence that she failed to pay for it.  Plaintiff states she does not believe she
10 admitted as much in her deposition.  Garcia Decl. ¶ 22.

11     Accordingly, the Court rejects Defendants' general argument that Plaintiff's confusion over
12 the source of the alleged debt mandates summary judgment in their favor.

13     2.  Statute of Limitations & § 1692c(c) Claims

14     Defendants argue that the statute of limitations has run on Plaintiff's claims related to her
15 cease and desist letters in 2006 and 2007.  Section 1692c of the FDCPA states, in relevant part:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer *with respect to such debt*.

19 15 U.S.C. § 1692c(c) (emphasis added).  The statute of limitations for claims under the FDCPA is
20 one year.  15 U.S.C. § 1692k(d).

21     To the extent that Plaintiff seeks damages or other remedies for Defendants' conduct in 2006
22 and 2007, Defendants are correct that such claims would fall outside the statute of limitations.
23 Although the parties do not address a continuing violation theory, such a theory is inapplicable to
24 the instant case because there was a long break between Defendants' 2006-07 conduct and their
25 renewed communications in 2010-11.  *See Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.
26 Supp. 2d 1156, 1161-62 (N.D. Cal. 2003) (distinguishing between "a continuing pattern and course

---

[2] It is unclear to the Court what is the Rule 11 basis for Br. Birdt's declaration regarding the freezer.

6

of conduct," which can be treated as a continuing violation, and a series of acts in which there had been a "substantial period of cessation" between acts, which cannot be so treated).

However, that Plaintiff cannot obtain relief for any violations occurring in 2006 and 2007 does not mean such conduct is irrelevant to her timely claims stemming from Defendants' conduct in 2009-2011. Brachfeld challenges Plaintiff's "conten[tion] that she sent letters about her ex-husbands [sic] account in 2006 & 2007 that somehow precluded Brachfeld from calling her in 2010 to discuss the freezer she had not paid for." Although Brachfeld's argument is not entirely clear, it could be making one of two arguments: (1) Plaintiff's initial cease and desist letters (2006-2007) focused on a different debt from that for which Brachfeld contacted her in 2010, and therefore did not preclude Brachfeld from contacting her. *See* 15 U.S.C. § 1692c(c) (stating that once a debt collector has received a cease and desist communication, it cannot contact a consumer again "with respect to that debt"); or (2) Plaintiff's initial letters mistakenly referred to her ex-husband's debt even though Brachfeld was actually calling about the freezer debt, and therefore were not binding on Defendants' later conduct. The Court will consider each contention in turn.

Addressing the first argument, the plain language of the statute confirms Defendant's position that a cease and desist letter with regard to one debt does not bind a debt collector with respect to another debt. However, as discussed above, there is no evidence in the record to support Defendants' position that the 2006-07 debt differed from the 2010-11 debt. In fact, the record evidence – including Defendants' own internal documents – supports precisely the opposite conclusion. At the very least, then, there is a genuine issue of fact as to whether the two periods of communication focused on the same debt.

The second argument, that Plaintiff's cease and desist letter referred to the wrong debt and therefore did not preclude Defendants from continuing to contact her, is similarly flawed. Even assuming Plaintiff was mistaken in the way she characterized the source of the debt (*i.e.*, assuming that the debt actually arose from her purchase of a freezer rather than her ex-husband's siding purchase), undisputed record evidence indicates that her letters consistently referred to both the same file number and amount owed referenced by Defendants. Defendants have offered no authority to suggest that the FDCPA permits debt collectors to ignore cease and desist

7

1 communications when the debtor inaccurately describes the nature of that debt. To the contrary,
2 even when the debt collector mistakenly violates the statute, the Ninth Circuit has explicitly held
3 that it may still be held liable because "[t]he FDCPA is a strict liability statute; there is no mental
4 state required to violate it." *Cruz v. Int'l Collection Corp.*, --- F.3d ----, 2012 WL 742337, at *3 (9th
5 Cir. Mar. 8, 2012) (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948
6 (9th Cir. 2011); *Clark v. Capital Credit & Collection Serv.*, 460 F.3d 1162, 1175 (9th Cir. 2006)).
7 And as noted above, the Act applies "regardless of whether a valid debt actually exists." *Baker*, 677.
8 F.2d at 777.

9 Although the statute does provide for a bona fide error defense, Defendants have not raised
10 such an argument here. *See id.* at *5 (declining to consider bona fide error defense when it was not
11 raised on summary judgment in the court below) (citing 15 U.S.C. § 1692k(c) ("A debt collector
12 may not be held liable in any action brought under this title if the debt collector shows by a
13 preponderance of evidence that the violation was not intentional and resulted from a bona fide error
14 notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.")).
15 Moreover, as discussed above, Defendants have produced no evidence that would demonstrate that
16 their communications in 2010-11 were (a) in reference to a freezer debt, rather than a siding debt;
17 and/or (b) regarding a different debt from that about which they had previously contacted Plaintiff
18 and with respect to which she had ordered them to cease and desist. Thus, even if the FDCPA gave
19 debt collectors certain freedom to ignore cease and desist communications under certain
20 circumstances, genuine issues of material fact preclude summary judgment as to any of these issues.

21 To the extent Defendants also argue that Plaintiff's letters were not proper cease and desist
22 letters because they do not explicitly state that Defendants should stop contacting her, such explicit
23 statements are not required by the plain language of the statute. The Act provides, "If a consumer
24 notifies a debt collector in writing *that the consumer refuses to pay a debt or* that the consumer
25 wishes the debt collector to cease further communication with the consumer, the debt collector shall
26 not communicate further with the consumer with respect to such debt.") (emphasis added). 15
27 U.S.C. § 1692c(c). *See also Bishop v. I.C. Sys., Inc.*, 713 F. Supp. 2d 1361, 1368 (M.D. Fla. 2010)
28 ("The statute does not require that the consumer use any specific language or 'magic words' to tell a

debt collector to cease communication. A rigid requirement would not make sense given the statute's remedial nature and its purpose to protect the public."). It is undisputed that Plaintiff's letters stated unequivocally that she refused to pay the debt, and that she threatened legal action if Defendants' conduct continued. *See* Garcia Decl. Exs. 10, 11, 15.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment based on the statute of limitations and the viability of Plaintiff's claim under § 1692c(c).

### 3. Section 1692d(5)

Defendants also appear to argue that Plaintiff cannot survive summary judgment on her harassment claim under § 1692d(5), which prohibits debt collectors from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." However, Defendant Brachfeld makes no argument in its motion as to why or how Plaintiff's claim fails; instead, it simply recites the standard of intent required to prevail on such a claim. Thus, arguably Defendants have not properly raised this basis for summary judgment.

To the extent Defendants seek to argue Plaintiff has not raised a genuine issue of fact as to Defendants' intent to harass, this argument fails. The parties do not dispute that Plaintiff received 40-50 calls from Defendants within a three-month time period; this Court has previously denied summary judgment based on similar fact patterns because intent may be inferred from such a volume of calls. *See Joseph*, 281 F. Supp. 2d at 1164-65 (denying summary judgment on § 1692d(5) claim based on 75 calls within one year, even though some of those calls may have been intended for other members of the household); *see also Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149, 1161 (N.D. Cal. 2007) (54 calls in six months and 17 in one month "show that defendants intended to annoy, abuse and harass plaintiff," warranting summary judgment *in plaintiff's favor*). Contrary to Defendants' representation in their Reply, Docket No. 88 at 3, *Clark v. Capital Credit & Collection Services* does not require otherwise. 460 F.3d 1162, 1176 n. 11 (9th Cir. 2006) (stating that § 1692d(5) requires intent but not addressing what would constitute evidence of such intent). Accordingly, Defendants' motion for summary judgment is **DENIED** as to this claim.

### 4. Vicarious Liability

Defendants LVNV and Resurgent filed a notice adopting Defendant Brachfeld's motion for summary judgment. Docket No. 80. The notice appears to be merely a joinder, without adding any substantive claims. However, in the notice, LVNV/Resurgent include a cursory statement that there is an additional ground for summary judgment "because Brachfeld was an independent contractor whose conduct LVNV did not control or direct," such that LVNV is not vicariously liable for Brachfeld's conduct. Docket No. 80 at 3. However, Defendants also state in the same sentence that "for the purpose of this motion, there is no significance to the distinction" between Brachfeld and LVNV. *Id.* Defendants offer no further argument, nor do they supply any evidence, to support this summary statement in their adoption of Brachfeld's motion. Instead, they waited until their reply to provide additional argument, contending that Plaintiff has not demonstrated that LVNV directed Brachfeld's conduct within the statute of limitations, and that they are not liable for an agent's conduct that goes beyond the scope of the agency. Reply, Docket No. 89, at 3. The Court finds that Defendants' vicarious liability argument has not been properly raised.

Moreover, Plaintiff's opposition correctly indicates that debt collectors may be held vicariously liable for the actions of their attorneys and other agents under the FDCPA. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994) (holding with respect to FDCPA claim that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken"). Plaintiff also provides evidence that Defendant Brachfeld acted on behalf of Defendants Resurgent/LVNV in attempting to collect the debt from Plaintiff. *See, e.g.*, Wilcox Decl., Ex. 1 (Birdt Depo.), at 72 (indicating that they reported to Resurgent regarding Plaintiff's debt, which they were attempting to collect on behalf of LVNV/Resurgent, and received instructions from Resurgent as to what to do with the file); *id.* Ex. 2 (Torres Depo.) (LVNV/Resurgent 30(b)(6) designee indicating that Brachfeld was its collection agency for Plaintiff's debt, and describing communications with Brachfeld regarding the debt); *id.* Ex. 8 (Brachfeld internal documents indicating that they were collecting the debt on behalf of LVNV/Resurgent); *id.* Ex. 9 (agreement between Defendants regarding debt collection activities); Garcia Decl. Exs. 9-15 (letters to and from Brachfeld listing LVNV as the debt holder); Docket No. 94, Ex 1, at 115 (Birdt Depo. stating that

Brachfeld was collecting debt on behalf of LVNV). Defendant Brachfeld's agreement to collect debt on behalf of the other Defendants is sufficient to demonstrate agency for summary judgment purposes. *Compare Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1370 (E.D. Cal. 1995) (denying summary judgment on vicarious liability where "[u]nder their contracts, the attorneys were to 'represent CheckRite ... [for the] purpose of facilitating the collection of amounts due through use of the legal process where appropriate'"), *with* Wilcox Decl., Ex. 9, at 2 ¶ 1.01 (2010 contract between Defendants stating that Brachfeld "agrees to diligently undertake collection activity on behalf of Resurgent's Client(s) in connection with" accounts Resurgent refers to Brachfeld, and that Brachfeld will comply with any applicable "work standards . . . provided by Resurgent"). That some of this evidence refers to Defendants' coordination outside the statute of limitations does not make it irrelevant as to whether Brachfeld was an agent of LVNV/Resurgent for purposes of Plaintiff's timely claims. Similarly, Defendants' (procedurally improper) argument in reply – that their contract with Brachfeld precludes liability because it requires Brachfeld to follow the law – has also been rejected. *See Newman*, 912 F. Supp. at 1371 (rejecting defendant's argument "that its agreements with the attorneys shield it from liability since they provide that '[a]ttorney warrants that they will not perform any acts not permitted by law'").

Because Defendants did not properly raise their vicarious liability argument, and because they proffer no evidence to rebut Plaintiff's evidence, the Court **DENIES** summary judgment as to LVNV/Resurgent.

C. <u>Objections to Evidence</u>

Defendants Resurgent/LVNV filed an objection to three of Plaintiff's exhibits. *See* Docket No. 90 (challenging Wilcox Decl., Docket No. 85, Exs. 3-5). Defendants object to these exhibits on relevance, prejudice, and authentication grounds, as they are articles and government documents related to Defendants' alleged unfair business practices generally. Because none of these exhibits are necessary to decide any of the issues related to the above summary judgment motion, the Court **OVERRULES** the objections as moot.

///

///

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment. This Order disposes of Docket Nos. 79 and 80.

IT IS SO ORDERED.

Dated: April 4, 2012

_____
EDWARD M. CHEN
United States District Judge