DAVID I. DALBY (SBN: 114750)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone:    415-362-6000
Facsimile:    415-834-9070
ddalby@hinshawlaw.com

Attorneys for Defendants
RESURGENT CAPITAL SERVICES L.P.,
LVNV FUNDING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DONNA GARCIA, <br><br> Plaintiff, <br><br> vs. <br><br> RESURGENT CAPITAL SERVICES L.P., LVNV FUNDING, LLC, THE BRACHFELD LAW GROUP, P.C. a.k.a. BRACHFELD & ASSOCIATES, P.C. and DOES 1-10, <br><br> Defendants. | Case No. 11CV-01253 EMC <br><br> Hon. Edward M. Chen <br><br> **DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS** <br><br> Date:   July 31, 2012 <br> Time:   1:30 p.m. <br> Courtroom: 5, 17th Floor |

I, DAVID IAN DALBY, declare:

1.      I am an attorney licensed to practice before the courts of the State of California and I am admitted to practice before this court. I have personal knowledge of the facts recited in this declaration and could competently testify thereto if called upon to do so. I was admitted to practice in the State of California on December 4, 1984. I have continuously practiced law in San Francisco since December, 1984.

2.      This case arose from a series of automated telephone calls placed to Plaintiff Donna Garcia, between November, 2010 and February, 2011. Garcia testified that instead of listening to the recorded message and returning the phone call, she would immediately hang up the phone causing

1

the automated system to place another telephone call to her. Except for those telephone calls between November, 2010 and February, 2011, there was no other conduct by the defendants giving rise to actionable claims. As the court observed in its Order on Brachfeld's Motion for Summary Judgment, Dock. # 96, 6:21-25:

> To the extent that Plaintiff seeks damages or other remedies for Defendants' conduct in 2006 and 2007, Defendants are correct that such claims would fall outside the statute of limitations. Although the parties do not address a continuing violation theory, such a theory is inapplicable to the instant case because there was a long break between Defendants' 2006-07 conduct and their renewed communications in 2010-11.

3. From the outset it was clear that this was a very simply case involving some automated calls to plaintiff immediately before she filed suit. The only question in the case was why there was renewed collection activity concerning plaintiff's debt and what systems defendants had in place to prevent such an occurrence. A Rule 30(b)(6) deposition of defendants Brachfeld and LVNV/Resurgent was all that would have been necessary to determine what the defendants knew about the recent telephone calls to plaintiff, and relative responsibility for the calls. Instead, plaintiff's counsel propounded broad, unfocused discovery that was not designed to address the only real issue in the case.

4. Thus, even though it was clear that no liability existed for any conduct occurring before 2010, plaintiff's counsel undertook every opportunity to complicate the case and erect many false barriers to a prompt resolution. Plaintiff's counsel was not interested in working in an efficient and reasonable manner to represent plaintiff, rather, billing the file was the objective of the representation.

5. Attached hereto as Exhibit A are complete annotated invoice entries for plaintiff's attorney Paul Nathan, in the same format as plaintiff's attorney Ronald Wilcox's billing record for ease of comparison. Attached hereto Exhibit B are annotated summary of billing entries of plaintiff's attorney Wilcox. Exhibit B does not attempt to address every billing entry in the 50-plus page unorganized Wilcox's billing statement, although, in particular, it should be noted that there are countless entries for "0.10", "0.20" and "0.30" that relate to "review of" emails, notices or other

2

DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, Case No. 11CV-01253 EMC

routine communications. Attached hereto as Exhibit C is a Summary Analysis of Plaintiffs' Attorneys' Billing Records, Exhibit A and B with a total of disputed hours, not specifically including the rote "review of" entries for 6, 12 or 18 minute periods of time. Exhibit C also disputes $5,150 in costs claimed by plaintiff which were excessive and unnecessary as explained in this declaration and the defendants' joint opposition brief.

6. On June 27, 2011, the Court entered an Order referring the case to mediation. Dock. # 27. On Monday, September 12, 2011, a mediation occurred with mediator Constance J. Yu. LVNV's general counsel, Michael Bahner, traveled from South Carolina to attend the mediation. Brachfeld's attorney and representative traveled to the mediation from Southern California. The case did not settle.

7. In September, 2011, Mr. Wilcox immediately engaged in sharp practices, as his billing records disclose, by improperly attempted to serve LVNV / Resurgent officer John Shinovsky, and other Resurgent employees, with deposition subpoenas in South Carolina, even though Mr. Shinovsky had no involvement in the facts of the underlying case. By his conduct, Mr. Wilcox was plainly trying to harass LVNV / Resurgent and a corporate officer who had no connection to the case and/or otherwise manufacture a controversy. See the Wilcox time entries for September through October 2011. As Magistrate Judge Bernard Zimmerman subsequently ruled as to Ms. Erica Brachfeld, there is no basis for randomly deposing corporate offices that have no personal knowledge of the facts of the case and have not been designated the defendant's Rule 30(b)(6) corporate witness. Dock. #s 63, 68. As discussed in detail below, virtually one quarter of all of the time billed to this case by plaintiffs' attorneys related to arranging, preparing for and taking depositions that would not produce admissible evidence and/or otherwise advance the case toward a resolution.

8. Plaintiff's counsel's prosecution of this case was characterized by gamesmanship, lack of cooperation and unwarranted discovery. Mr. Wilcox caused an unnecessary expenditure of attorney time and involvement of the Court by demanding immediate responses to his demands and making applications to the Court for relief without making a reasonable, good faith attempt to meet

and confer regarding the issues. For example, that a defendant produced some documents that were not Bates numbered became a reason to generate another meet and confer letter and bill the file. Mr. Wilcox and Mr. Nathan abused the Court's informal procedures for applications for administrative matters and other relief. See Dock. #s 31, 47, 50, 53, 60, 63, 100, and 110.

    9. Pleadings filed on behalf of Plaintiff obviously did not reflect new or original work product but were "cut and paste" products from many other FDCPA cases. Indeed, many of the pleadings filed by Mr. Wilcox appear to have been copied with little modification from the case *Fausto v. Credigy Services Corp.*, 598 F.Supp.2d 1049 (CV-05658, N.D.Cal. 2009)), in which Mr. Wilcox was plaintiff's attorney of record.

    10. Moreover, Mr. Wilcox frequently made arguments bearing no relationship to plaintiff's claims, cited cases for propositions that they did not stand for or for issues that the cases did not even address. See Dock. # 33 (p. 4, addressing Mr. Wilcox's inaccurate citation of *McCollough v. Johnson, Rodenburg, Lauinger*, 637 F.3d 939 (9th Cir. 2011). On one such occasion, Magistrate Judge Bernard Zimmerman commented that he had attempted to find the authority cited by Mr. Wilcox, but could not find the case.

    11. After Mr. Nathan associated as counsel with Mr. Wilcox on October 14, 2011, (Dock. # 41), the attorneys began duplicating the billing activities of each other. Thus, Mr. Nathan billed 9.0 hours to attend the Brachfeld Rule 30(b)(6) witness deposition and Brachfeld employee Betty Gonzalez's deposition on November 2, 2011, even though Mr. Wilcox was taking those depositions. Mr. Nathan also billed time to attend the LVNV / Resurgent Rule 30(b)(6) witness Jean Paul Torres on November 9, 2011 and Rule (30)(6) depositions of Mr. Torres and Michael Bahner on December 13, 2011. As to the November 2 and 9, 2011 depositions, Mr. Nathan also billed for travel time to these deposition in San Jose even though the deposition were being taken via Skype internet video conferencing, and Mr. Nathan could have viewed the depositions without leaving his office in San Francisco.

    12. On September 23, 2011, the parties submitted a joint letter regarding a discovery dispute. Dock. # 33. On October 4, 2011, the Court issued its Order granting, in part, and denying,

4

DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, Case No. 11CV-01253 EMC

in part, Plaintiff's request for discovery. Dock. # 38. In particular, the Court ruled that although defendants' net worth was discoverable, financial documents relating to that net worth, such as balance sheets and financial statements, were not.

13. Over the next several months, misrepresenting the Court's ruling, Plaintiff's counsel continued to make the argument that the Court had ordered production of documents relating to defendants' financial information when it had not. Further briefing concerning the discovery of documents relating to financial information occurred consuming a great deal of time in a very simply case and the matter was referred to Magistrate Judge Bernard Zimmerman. Dock. #s 50, 51, 53, 55, 58. Undeterred, Plaintiff's counsel made yet another motion for discovery of documents relating to defendants' financial information. Dock. # 60. Defendants' counsel filed a response, again pointing out:

> At the discovery hearing on November 7, 2011, Defendant's counsel confirmed that Defendants had already provided their net worth information to Plaintiff in interrogatory responses. Counsel also confirmed to the Court that the Defendants are private companies that do not make public filings. Judge Zimmerman explained that he had spoken with Judge Chen and Judge Chen's intent concerning his discovery order (Document 38) was that Defendants would provide their net worth information but that documents relating to their net work did not have to be produced. Only if there was some question raised concerning the veracity of Defendants' net worth information, would the Court consider the production of documents relating to that information. No such questions exists or has been identified by Plaintiff and the net worth of LVNV and Resurgent is not relevant to any issue in this case. Dock. # 61.

14. At a hearing on November 29, 2011, the Court confirmed its previous ruling that financial net worth documentation of LVNV / Resurgent was not discoverable. Of course, none of this discovery related to the single issue in the case of renewed calls to plaintiff in November, 2010.

15. Finally, on December 13, 2011, Mr. Wilcox took the deposition of LVNV / Resurgent's Rule 30(b)(6) designee, Managing Counsel, Michael Bahner, who again confirmed the accuracy of LVNV / Resurgent's interrogatory responses concerning their net worth information, and Mr. Wilcox conceded that LVNV / Resurgent were not required to provide documentation concerning their respective net worth or assets and liabilities. (Exhibit D.) Accordingly, none of the attorney's fees and expenses generated by Mr. Wilcox and Mr. Nathan manufacturing and

5

perpetuating a dispute about financial information documentation of LVNV / Resurgent should not be recoverable. Dock. #s 38, 69. Mr. Wilcox billed at least 15 hours concerning this issue and that amount must be deducted from any calculation of recoverable attorney's fees in this case.

16. On November 22, 2011, LVNV / Resurgent representative, litigation specialist, Jean Paul Torres, traveled to San Francisco from South Carolina to attend a settlement conference with Magistrate Judge Bernard Zimmerman. Brachfeld's attorney and representative also traveled from Southern California and attended the settlement conference. The case did not settle. At the settlement conference, Judge Zimmerman made a proposal to settle the case. After defendants' counsel obtained authority to meet Judge Zimmerman's proposal, Plaintiff's counsel increased the settlement demand by $30,000, even though there had been no activity sufficient to warrant such an increase. (Also see the Declaration of Jonathon W. Birdt in support of this opposition.)

17. Mr. Wilcox's billing records contain a staggering number of some fifty-three (53) entries relating to communications with "colleague" or other unidentified persons for a total of approximately 20 hours. Mr. Wilcox's unidentified communications with colleagues and others are not reasonable as defendants have no way to challenge such claimed fees.

18. There are also an untold number of billing entries by Mr. Wilcox for "0.10" and "0.20" purportedly relating to tasks such as "review email" or "review notice." (See Wilcox bills, October 26, 2011, for example.) It does not take more than the blink of an eye to review the vast majority of one or two sentence emails, and compounding such entries, numerous times a day, over several months, alone, evidences that the alleged total of Mr. Wilcox's hours are not reasonable.

19. There are innumerable duplicate billing entries in the Mr. Wilcox's and Mr. Nathan's records reflecting attorney conferences, in person and telecommunications between Mr. Wilcox and Mr. Nathan; attendance of two attorneys at the same event; time to familiarize with the case, and time for revising the work product of each other on the same project:

    a. Mr. Wilcox and Mr. Nathan also had duplicate billing entries for arranging, preparing for, and attending a conference with a "Focus Group." See billing entries dated November 20-22, 2011.

b. Mr. Nathan and Mr. Wilcox both billed time to prepare an opposition to the Brachfeld motion for summary judgment. See billing entries dated late February-March, 2012. Total time spent in preparing an Opposition to Motion for Summary Judgment was unreasonable. February 13, 2012 (1.4); February 16, 2012 (7.2); February 17, 2012 (4.7); February 20, 2012 (2.4); February 28, 2012 (2.6); February 29, 2012 (5.7); March 2, 2012 (12.9). There are vague duplicative entries in the billing records of both attorneys, so it is impossible to reasonably discern what work they actually performed to oppose the motion for summary judgment.

c. Mr. Wilcox and Mr. Nathan also billed duplicate time on pretrial documents such as jury instruction, verdict forms, and motions *in limine*, including the issue of defendant's *bona fide* error defense. See billing records for April 19, 2012 through May 1, 2012. Both attorneys billed to prepare these documents and they are very similar to those in *Fausto*. See Dock. #s 254-257.

20. Plaintiff had two attorneys attend the following proceedings:

a. Depositions of Brachfeld Rule 30(d)(6) witness and Brachfeld employee Betty Gonzalez, November 2, 2011, total of 18.10 hours attorney time.

b. Depositions of LVNV / Resurgent Rule 30(d)(6) witness, November 9, 2011, total of 12.5 attorney hours.

c. Settlement Conference, November 22, 2011, total of 18.5 hours.

d. Depositions of LVNV / Resurgent Rule 30(b)(6) witnesses, December 13, 2011, total of 8.1 attorney hours.

e. Attend Status Conference, January 20, 2012, total of 6.0 attorney hours.

f. Attend Pre-Trial Conferences on April 30 and May 7, 2012, total of 24 hours.

**Total two attorneys attending for these matters was 69.1 hours.**

21. As noted above, plaintiff's counsel took numerous depositions that were simply not necessary to a resolution of this controversy including Resurgent employees Cheryl Griffin on October 27, 2011 and Tiffany Thomas on November 21, 2011. Nominally, these Resurgent

7

employees were deposed because their names each appeared once in the Resurgent electronic account notes and they made a single entry to the file. (See Exhibit E.) Ms. Griffin notated the account on March 12, 2009 over two years before plaintiff filed suit. Ms. Thomas made an automated entry to the account on October 19, 2006, four and half years before plaintiff filed suit.

22. These Resurgent employees testified that they might receive 70 telephone calls or other communications in a single day, and they had no personal knowledge of any facts in the case, yet their depositions each went on for several hours. The Resurgent employee depositions were not necessary to explore LVNV / Resurgent's bona fide error defense, as LVNV / Resurgent's written discovery responses addressed the bona fide error defense and Resurgent employee Jean Paul Torres was designated the Rule 30(b)(6) deponent for that purpose and he was deposed twice by Mr. Wilcox on November 9, 2011 and December 13, 2011. Exhibit F. (Exhibit F and its attached exhibits was not previously filed with the Court by defendants as pursuant to the Court's pre-trial order, filing the opposition to plaintiff's motions *in limine* was plaintiff's counsel's responsibility.)

23. Mr. Wilcox followed the same pattern of conduct with respect to the depositions of former and current Brachfeld employees, taking the depositions Betty Gonzales on November 2, 2011 and Ohio resident, former employee, Courtney Hileman in December, 2011 and January, 2012. Like the Resurgent employees, these witnesses had no personal knowledge of dealing with plaintiff or plaintiff's account other than they appeared to have made a notation to an electronic account. Not surprisingly, neither witness had a recollection of any contact with plaintiff, except to confirm that they appeared to have made the note on the electronic account. Also, these deposition which ran several hours, and in Ms. Hileman's case, two separate sessions over two days without completion, were also not necessary for Brachfeld's bona fide error defense, which was addressed in Brachfeld's Rule 30((b)(6) corporate designee deposition and responses to plaintiff's request for production of documents. Exhibit F. Furthermore, as Ms. Hileman left her deposition without Brachfeld's attorney having an opportunity to examine her, Ms. Hileman's two day deposition could not have been used at the trial.

DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, Case No. 11CV-01253 EMC

24. For no reason, plaintiff's attorneys also took the depositions of automated telephone service provider LiveVox and Transunion Credit Bureau. Entries relating to arranging, preparing for and taking the LiveVox and Transunion depositions appear in December, 2011 of Mr. Nathan's and Mr. Wilcox's bills. I personally attended both of these depositions that were taken by Mr. Nathan. Other than to pad the billable records, there was simply no explanation for these depositions as there was no dispute that automated telephone calls via a LiveVox system had been made to plaintiff and there was no controversy concerning the content of plaintiff's credit report with Transunion.

25. The total attorney time billing relating to all six of these depositions is approximately 90 hours, the vast majority being billed by Mr. Wilcox and should be deducted from the total attorney time claimed in the motion. Attorney's activities that cannot result in production of admissible evidence cannot properly the basis of an attorney's fees award.

26. As noted above, this was a very simple case involving some automated telephone calls to plaintiff. Brachfeld's motion for summary judgment did not raise any new or novel concepts, but was analogous to a motion for judgment on the pleadings and addressed the narrow issue of whether the complaint properly stated a cause of action for an FDCPA violation. The Court ruled that plaintiff's claim related only to a single debt that had always been at issue for many years. The argument in plaintiff's moving papers that some new FDCPA case law was weighed is not correct. Similarly, the Court ruled that LVNV / Resurgent could be vicariously liable for Brachfeld's conduct as the attorney-debt collector agent for LVNV / Resurgent, citing *Fox v. Citicorp Credit Services, Inc.*, 15 Fed 3d 1507, 1516, (9th Cir. 1994). There was nothing remarkable in this holding and plaintiff's attorneys had previously cited the *Fox* case for the proposition of vicariously liability. See Dock #33, p. 4. The argument that there was some novel issue in this case about compelling witnesses attendance at the trial is a mystery and simply not true.

27. Instead of focusing on the narrow issues in the case, a time frame of approximately four months from November, 2010 to February, 2011, plaintiff's attorneys spent many hours investigating extraneous issues that simply would not be admissible at trial. For example, in the depositions of LVNV / Resurgent's Rule 30(b)(6) designees, Mr. Wilcox asked about proceedings in

9

the State of Maryland that had no relationship to this case. In opposition to the motion for summary judgment, plaintiff's attorneys filed without proper authentication press releases and media articles having nothing to do with plaintiff's claims. Even if a proper foundation could have been laid for the documents, which had not been provided, the materials were irrelevant. LVNV / Resurgent properly objected to plaintiff's evidence in opposition to the motions for summary judgment. (Docket No. 90) Specifically, Defendants objected to Plaintiff's voluminous exhibits 3, 4 and 5 in Opposition to the Motion for Summary Judgment. Plaintiff is not entitled to recover attorney's fees for time spent on a far flung exercise in mud slinging bearing no relationship to the facts of plaintiff's claims. Accordingly, the time shown on plaintiff's attorney's time records relating to the Maryland proceedings, newspaper articles or possible new debt collection regulation legislation in California, must be excluded from any consideration of an award of attorneys fees.

28. Other examples of plaintiff's counsel's gamesmanship was to arbitrarily decide to meet with his co-counsel, Paul Nathan, at Wilcox's office in San Jose for purported all counsel pre-trial meeting even though Nathan's office is in San Francisco and Mr. Birdt's office is in Los Angeles County. (Docket No. 113) The transparently false explanation for this meeting in San Jose was that it was more convenient for defense counsel. Dock. # 110, p 2. Then plaintiff counsel filed yet another letter with the Court complaining, even though Mr. Birdt had already stated that he could not attend the meeting.

29. In sum, of the approximate total of 117 hours Mr. Nathan billed to this matter, virtually all of it matched the activities by of Mr. Wilcox and must be eliminated for duplicate, unnecessary entries, conferences, including attending events where Mr. Wilcox was also present, meetings with Mr. Wilcox, and getting up to speed in the case and preparing for and taking unnecessary depositions. Moreover, in view of Mr. Nathan's general inexperience and lack of any previous work in the field of Fair Debt Collection Practices Act litigation, a billable rate of $300 per hour is simply not justifiable. Mr. Nathan was Mr. Wilcox's *de facto* junior associate who was getting his first exposure to FDCPA litigation. Accordingly, based upon my experience practicing law in San Francisco for over 27 years, my personal observation of Mr. Nathan's conduct of

depositions in this case and review of his written legal work, to the extent any of Mr. Nathan's time is not excluded because it was entirely unnecessarily duplicative, a reasonable rate for his time as a junior FDCPA associate is $190 per hour.

30. The approximate total 447 hours for Wilcox must also be reduced substantially in view of the evidence in support of this opposition to plaintiff's motion. Many hours were spent by Mr. Wilcox solely for the purpose of billing time with no expectation that the activities would lead to the discovery of evidence admissible at trial. Between unnecessary depositions, manufactured discovery disputes, duplicate billings, inscrutable block billings, countless rote billing entries for "0.10" and "0.20", unidentifiable communications and unidentifiable work, Mr. Wilcox reasonable and necessary hours worked on the case are approximately 225 hours. Mr. Wilcox states that he turned away other work so that he could represent Garcia in this action, but he does not state any facts to support this conclusion. Accordingly, Wilcox hours should be reduced to 225 at an hourly rate of $300 per hour. There was nothing remarkable, unique or novel about this case.

31. Alternatively, in view of the indecipherable and conflicting entries in plaintiff's counsel's time records, the unquestionable duplication of billable time and block billing, the innumerable unidentified communications and email exchanges, and Wilcox's excessive entries to review emails, notices and other communications, the only reasonable way for the Court to begin the lodestar calculation is by deducting from Wilcox's supposed total hours the number of hours Nathan claims to have worked in the case for a total of approximately 325 hours for Wilcox and 116 hours for Nathan. At a minimum, this procedure will address in some measure the rampant duplication of time contained in the billing records, and to some extent the issues of block billings, excessive time entries to review communications, and adjust the lodestar for unidentified exchanges and attorney conferences. The Court should then deduct from each attorney's claimed hours the time spent on unnecessary depositions described above, 10 hours for Nathan and approximately 80 hours for Wilcox. The Court should use those total hours, 106 for Nathan and 245 for Wilcox, as the reasonable hours for calculating the lodestar based on Wilcox claimed rate of $400 per hour and a rate for Nathan of $190 per hour, an award attorney's fees of $118,140. Given plaintiff's decision to

11

DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, Case No. 11CV-01253 EMC

employ two attorneys and the attorneys failure to properly document their activities and undertake activities that were unquestionably duplicative, plaintiff has no basis to object to such a method of determining an attorney fee award.

32. The declarations of other attorneys in support of the motion for attorney's fees provide no substance to support a claimed rate of $400 per hour. The declarants have no personal knowledge of the work performed by Mr. Wilcox in this case and therefore cannot express any opinion about the quality of the work that he did perform. Moreover, the Court must examine with great suspicion the declaration of Mr. Fred Schwinn. Mr. Wilcox and Mr. Schwinn have a close working relationship and routinely file declarations in support of each other's attorney's fee motions. See *Bretano v. International Collection Corp.* 2010 WL 2510081, p.*4 (N.D. Cal.). Further, as the Court is aware, Mr. Wilcox and Mr. Schwinn are currently co-counsel representing plaintiffs in a series of FDCPA cases before this Court concerning a process serving company.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 21, 2012

_____
DAVID I. DALBY

3148820v1  922519

---

12

DECLARATION OF DAVID IAN DALBY IN SUPPORT OF DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS, Case No. 11CV-01253 EMC