Ronald Wilcox, Bar No. 176601
1900 The Alameda, Suite 530
San Jose, CA 95126
Tel: (408) 296-0400
Fax: (408) 296-0486
ronaldwilcox@post.harvard.edu

Paul Henry Nathan, Esq., Bar No. 262697
The Law Offices of Paul Nathan, P.C.
540 Pacific Ave.,
San Francisco, CA
Tel: (415) 341-1144
paulnathan@nathanlawoffices.com

ATTORNEY FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| DONNA GARCIA, | ) CIV. NO. 11-1253 EMC |
| Plaintiff, | ) |
| | ) **SUPPLEMENTAL DECLARATION** |
| | ) **OF RONALD WILCOX IN SUPPORT** |
| | ) **OF MOTION FOR AN AWARD OF** |
| | ) **ATTORNEY'S FEES** |
| RESEURGENT CAPITAL SERVICES, LLP, | ) |
| LVNV FUNDINC, LLC, BRACHFELD | ) |
| LAW GROUP, P.C., | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

I, Ronald Wilcox, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. section 1746, that the following statements are true:

1. I am one of the attorneys for Plaintiff Donna Garcia in this action. I make the following supplemental declaration in support of the motion for attorney's fees and costs, based upon my own personal knowledge.

**Defendant's Recalcitrance Caused Plaintiff to Expend Considerable Resources**

2. Defendants – repeat players in attempting to collect disputed debts through the use of the telephone and the courts - have every right to rely upon the judicial system for determination of their legal disputes. But when they unlawfully harass someone in an attempt to collect a disputed debt[1], ignore cease and desist orders[2], fail to show up at Case Management Conferences[3], get up and walk out of a deposition[4], disobey the Court's orders on multiple occasions without explanation[5], have to be forced by Court Order to comply with the Court's pretrial orders[6], resist stipulating to mediation[7], refuse to cooperate in discovery or stipulate to routine matters (including accommodating a funeral)[8], lodge affirmative defenses that lack

---

1 See Complaint, Docket #1.
2 *Id.*
3 Defendant Brachfeld failed to appear for two (2) Case Management Conferences.
4 Defendant Brachfeld (Jon Birdt) got up and walked out of his deposition, stating he had to go "pee".
5 Defendant Brachfeld failed to appear at two (2) Case Management Conferences, all Defendants were ordered to meet and confer with Plaintiff in person at the courthouse regarding pre-trial matters, since they failed to meet and confer as is required by this Court's Pre-Trial Order. See Dock #117.
6 *Id.*
7 See Dalby June 13, 2011 email stating Brachfeld's refusing to communicate about mediation. **Exhibit 1.**
8 Defendants refused to provide insurance agreements as required by Fed. R. Civ. P. 26, requiring Plaintiff to expend time and resources to investigate the matters through other means. They also

any support [9], hang up on counsel when they are simply trying to meet and confer to save the Court time,[10] and then throw all their efforts into fighting over the reasonable attorney's fees they agreed to pay, Defendants' complaints about the high cost of litigation garner little sympathy.

**Depositions Were Reasonable and Led to Settlement**

3.   The depositions conducted herein were the very reason Defendants were forced to settle this case before trial.  At deposition, Defendant Brachfeld was confronted with the fact that the person it chose to be its corporate representative (Jon Birdt), and speak for the corporation, was suspended by the California Bar.[11]  Brachfeld (Jon Birdt) admitted Plaintiff's 2007 cease and desist letter was indeed received[12] (despite the fact Defendants earlier denied such on the phone with Plaintiff).  Courtney Hileman testified that the collection logs Brachfeld (Birdt) produced were modified, and critical information "magically" disappeared.[13]  Livevox testified and disputed Birdt's contention that most of the calls were never placed.[14]  The

---

resisted such routine stipulations as agreeing to allow depositions by Skype video, requiring the Plaintiff to file a motion (Dock # 47); refused to stipulate to attend mediation (**Exhibit 1**) requiring the Court to set an ADR Phone Conference (Dock #23); refused to stipulate to continue Courtney Hileman's deposition so she could attend a funeral, requiring Plaintiff to file a motion and obtain a Court Order so the parties could complete the deposition (Dock# 72-73); and resisted discovery at every turn, requiring numerous matters to be brought to the court. See Dock # 31, 33, 38, 50-69, 72-73, 100-105, 109.
9 See Answers, Docket #10 and #12, and Court's Order Denying Summary Judgment, indicating Defendants did nor even raise the FCPA's "bona fide error" defense. *Garcia v. Resurgent Capital Services, L.P., et al.,* 2012 U.S. Dist. LEXIS 47837 (N.D. Cal. 2012).
10 Defendant's counsel Jon Birdt hung up on Paul Nathan who was simply trying to obtain a stipulation to extend the time to file the herein reply brief, necessitating yet another motion, which was again granted by the Court. Dock #142.
11 **Exhibit 2**.
12 Brachfeld Deposition (John Birdt), 66:1-11, 89:2-5. **Exhibit 3**.
13 Courtney Hileman depo. 25:1-30:6. **Exhibit_ 4.**
14 Liveox testified there were fifty (51) calls placed to Plaintiff on behalf of Brachfeld, 75:3-76:4, 123:12-23. **Exhibit 5.**

Court later ordered Birdt and Brachfeld to appear and testify at trial, *over* their objections. Dock #109. *Garcia v. Resurgent Capital Services, L.P., et al.,* 2012 U.S. Dist. LEXIS 59390 (N.D. Cal. 2009).

4.  In yet another disturbing twist, when Defendants were ordered to appear in Court to fulfill their pre-trial obligations to meet and confer in person, Birdt stated Brachfeld was prepared to testify that his early admission (that Brachfeld received the cease and desist letter), was incorrect!  The matters was resolved at that meeting with Defendants agreeing to pay Plaintiff $50,000, *plus* reasonable attorney's fees and costs.

5.  For the Court's convenience Plaintiff lists each deposition taken in this case, the name of Plaintiff's counsel that appeared at the deposition, and a comment regarding its purpose.

    **Deponent (Attorney taking/defending the deposition)- Comment regarding the deposition**

6.  **Donna Garcia** (Ronald Wilcox)- Plaintiff, deposed by Defendants.

7.  **Betty Gonzales** (Ronald Wilcox)- Testified she was employed by Brachfeld as a collector for 3.5 years. Gonzales Depo. 9:9-12.[15]  Thus, she was knowledgeable of Brachfeld's collection practices and policies. Additionally, Erica Brachfeld's interrogatory responses indicated that in a March 16, 2009 telephone conversation with Betty Gonzalez, Plaintiff admitted it was her debt.[16]  However, Gonzalez testified she does not remember the Plaintiff saying that, and that she never spoke to Erica Brachfeld about the conversation. Id. at 36:6-8; 38:11-13.  Indeed, she testified she doesn't remember anyone ever asking her about the conversation. *Id.* Obviously, Plaintiff can conduct depositions to test the truthfulness and credibility of a witness, especially one disclosed on Defendant's initial disclosures, like Erica Brachfeld.

---

15 **Exhibit 6.**
16 **Exhibit 7.**

8. **Tiffany Thomas** (Ronald Wilcox)- Thomas worked for Resurgent for 8 years, handling incoming mail.  Thomas depo. 6:18-7:9.[17]  Thus, she testified about cease and desist practices and policies, and how they related to attempts to collect from Plaintiff. Furthermore, it was her job to note cease and desist letters, and she did such in regard to the Garcia account. Thomas depo. 34:22-35:8.  Thomas also testified Resurgent's outside law firms would not be allowed to collect once the cease was noted. Thomas depo. 17:3-6.  However, this is in sharp contradiction to what others testified to (see below).  Furthermore, Resurgent listed this employee as a witness for trial in the parties' Joint Pre-Trial Statement, and thus Plaintiff would need to rely on her testimony to rebut.[18]

9. **Cheryl Griffin** (Ronald Wilcox) - Ms. Griffin testified she worked for Resurgent for more than 5 years, and was also questioned about her telephone call with Ms. Garcia, and the debt collector's cease policies. Griffin depo. 105:14-107:15.[19]  Griffin testified if Resurgent received a cease letter it would not place the account with a collection agency, but would place the account with a collection law firm, for the purposes of collection, which directly contradicted Tiffany Thomas. Id., and 34:16-20.  Also, Resurgent listed this employee as a witness for trial in the parties' Joint Pre-Trial Statement, and thus Plaintiff would need to rely on her testimony to rebut.

10. **Michael Bahner** (Ronald Wilcox)- Defendant's F.R.C.P. 30(b)(6) witness.  Obviously, a party can depose trial witnesses before trial, and thus save the Court and jury time. Furthermore, a second deposition was necessary, with Judge Zimmerman allowing Plaintiff to ask questions about Resurgent's net worth.

---

17 **Exhibit 8**.
18 **Exhibit  9**.
19 **Exhibit 10**.

11. **Resurgent and LVNV Financial/Jean Paul-Torres** (Ronald Wilcox and Paul H. Nathan). Party. Obviously, a party can depose trial witnesses before trial, and thus save the Court and jury time.

12. **Brachfeld Law Group, P.C./Jon Birdt** (Ronald Wilcox and Paul H. Nathan).  Party.  Both Birdt and Erica Brachfeld were ordered to appear and testify at trial. Obviously, a party can depose witnesses before trial, and thus save the Court and jury time.

13. **Courtney Hileman deposition 1** (Ronald Wilcox). Ms. Hileman is a debt collector that worked for Defendant Brachfeld.  She was personally familiar with their collection logs and computer systems. She testified that the collection logs Brachfeld (Birdt) produced were modified, and critical information "magically" disappeared. Courtney Hileman depo. 25:1-30:6.[20]

14. **Courtney Hileman deposition 2** (Paul H. Nathan). On December 13, 2011, Judge Zimmerman ordered Defendants to produce her last known contact information.  Dock #69. (Brachfeld had concealed Ms. Hileman's location information, and finally revealed it around December 21, 2011).   Ms. Hileman's deposition was commenced on December 30, 2011. Brachfeld (Birdt) refused to stipulate to continue Hileman's deposition so she could attend a funeral on the afternoon of December 30, 2011. The Court granted Plaintiff's motion extending the discovery deadline and allowing for completion of the deposition.

15. **LiveVox, Inc.** (Paul H. Nathan)- At deposition this third-party auto-dialer company that refuted Brachfeld's assertion that "dead air" calls appearing in the collection logs meant the calls were never placed.  See Livevox Deposition testimony regarding fifty (51) calls being placed to Plaintiff on behalf of Brachfeld, 75:75:3-76:4, 123:12-23.[21]  In an email dated

---

[20] **Exhibit 11.**
[21] **Exhibit 12.**

November 21, 2011, Birdt stated, "I have confirmed with our vendor that the note "dead air" means the call was not dialed.".  The jury would decide whether Birdt or Livevox was lying. Mr. Birdt testified there were 38 telephone calls placed. Brachfeld (Birdt) Deposition,127:2-17.  Thirty (30) of those appeared as "dead air."  Thus, the deposition was necessary to show the true number of calls placed after the cease and desist letters exceeded fifty (50), as opposed to just a handful.

16. **Transunion (Paul H. Nathan)**- Third-party credit reporting agency that testified it requested Defendant Resurgent/LVNV verify the dispute debt.  However, Transuniuon testified that instead of sending Transunion verification of the debt, Defendants simply requested the item be removed from Plaintiff's credit report. Transunion depo. 49:10-22.[22]  This, further led Plaintiff to believe Defendants should not be attempting to collect this dispute debt.

**Financial Condition Discovery Was Compelled**

17. Defendants mischaracterize discovery conferences/motions with the Court.  Regardless, counsel is entitled for compensation in bringing or defending motions, whether won or lost, since success is assessed on case as a whole.

18. On October 4, 2011, this Court granted Plaintiff's Motion to Compel financial discovery, requiring Defendants to "RPD #10 and INT #8", and denied RPD #11.  The parties joint letter to the Court (Docket #33) spelled out the discovery requests as:

**"RPD #10- Documents sufficient to identify the net worth of Defendant including but no limited to financial statements (i.e. balance sheet, income statement, etc).; RPD #11, Defendant's federal and state income tax returns, including schedules, for the past three years; and INT. #8- Identify the net worth, including the assets and liabilities, of Defendant."**

19. Defendants attempted to capitalize on a typographical error, to which they too were signatories, in an effort to avoid this Court's order, and refused to produce documents in

response to RPD #10 and 11.  The parties dispute what occurred in discovery conferences with Judge Zimmerman, and there are no court orders clearly resolving such.  Although, Defendant Brachfeld did produce tax returns in response to Judge Zimmerman's Order. Dock #69.  Regardless, ultimately, through case law research Plaintiff determined that since Defendant Resurgent was ordered to produce the financial documents, as well as identify and testify about net worth, any attempt by them to overturn a punitive damages ruling would fail (regardless of whether they produced the financial documents or not), and thus chose to proceed towards trial and not spend any more time arguing over discovery that was no longer needed.

**Time Entries Were Appropriate**

20. Nearly all of what Defendant alleges was impermissible "block billing" is not such at all, at least according to the controlling authorities.  Indeed, many of the entries are for a small portions of the day, and less than 1 or 2 hours. When Plaintiff was forced to devote an entire day to this matter, the particular tasks performed were specified. Other times Plaintiff was involved in one discrete task, such as preparing for a deposition, and specifically state such. Other times Defendants' criticize Plaintiff for recording multiple tasks for a total of 0.1.  Yet, Defendants do not cite any authority for the proposition that time must be recorded in increments of less than the 0.1 universal standard.  In numerous entries, Plaintiff went above and beyond what most counsel do and actually broke down the time within an entry to show, 0.1, plus 0.2, plus 0.2, plus 0.5, for a total of 1.0 hours.  Defendants inexplicably fail to state how this is impermissible block billing. Examples of these practices appear below for the Court's convenience:

**Date: 6/14/11, Hours 0.5**

22 **Exhibit 13**.

"RECVD fax from client, Garcia signed ADR certif; drafted Initial Disclosures, REVD file, called PI, spoke to husband,   email to clt re witnesses."

**Date: 6/23/11, Hours 0.4**

"REVD signed stip to mediate from Brachfeld, revised stip, efiled, courtesy copies to court (mail and email), with   CMC stmt (mail); email to ADR."

**Date: 8/1/11, Hours 1.0**

"Call to clt, spoke to husband re mediation availability for Donna 0.1, numerous emails re pre-med call reset   0.2, REVD file for CONF call re pre-mediation 0.2, pre-mediation call 0.5."

**Date: 10/20/11, Hours 7.7**

"All day meeting with clt (9-3:30), Tel hrg with Judge 2-2:20. Call with Dalby re m&c after PI depos tomorrow re Def discovery responses, Pl will produce docs 0.1; Drafted objs to PL depo notice/doc production, Began 9am ended 4:45."

**Date: 10/31/11, Hours 6.0**

"Began reviewing emails from Birdt **to use at Brachfeld 30b6 depo** tomorrow, **drafted depo outline, REVD docs/exhibits for depo**, emails to court reporter."

**Date: 11/4/11, Hours 0.10**

"REVD Order from court to file RPD #8 and Int #10 in 0.10 advance of hearing; REVD file, efiled ERRATA re [54] Order Plaintiff's Discovery Set I to LVNV Funding, LLC and Resurgent Capital Services, L.P. by Donna Garcia. (Wilcox, Ronald) (Filed on 11/4/2011)."

21. Furthermore, what Defendants call "wasteful litigation" is the necessary litigation that helped

caused them to see the light and finally agree to pay Plaintiff $50,000 as well as her

attorney's fees and costs.  The particular docket entries are explored in more further detail

below:

**Dock #31.**  Letter to Judge Chen Requesting Deadline to File Joint Letter Regarding

Discovery Dispute.  When Defendants failed to comply with this Court's standing orders,

Plaintiff was force to file a motion and ask:

"Plaintiff understands that the Court prefers the parties not file unilateral statements. *Chattler v. United States*, 2009 U.S. Dist. LEXIS 43304, 2-3 (N.D. Cal. May 12, 2009).  Thus, Plaintiff respectfully requests the Court enter an Order requiring Defendant to provide their comments regarding the joint letter by Wednesday, September 21, 2011, and that a joint letter be filed with the Court by Friday, September 23, 2011."

Plaintiff's motion was granted. Dock #33.

**Dock #47**. Motion for Adminsitrative Relief For Order to Allow Deposition via Telephone/Video.  As stated in the motion: "On October 21, 2011, the parties discussed the matter on the telephone, but Defendant refused to stipulate. With the date of the depositions fast approaching, and the necessary arrangements needing to be made, Plaintiff was forced to file this Motion for Administrative Relief."

As a result of the motion Defendant Brachfeld agreed to stipulate, and the court entered the Order. Dock# 57.

**Dock #50.** October 28, 2011, Letter to Judge Zimmerman Regarding Resurgent's Financial Discovery. Addressed above.

**Dock #53.** November 3, 2011, Letter to Judge Zimmerman Regarding Brachfeld's Deficient Discovery Responses. As a result of the discovery conference Defendants were ultimately ordered to supplement discovery (including the identity of collectors/fact witnesses such as Courtney Hileman, tax returns, insurance agreements, etc).  Also see Docket #69 re same.

**Dock #60**. November 22, 2011, Letter to Judge Zimmerman Regarding Financial Condition. As noted in the letter itself, this was a letter Pursuant to the Court's Comments of November 7, 2011, of which a written order had yet to be issued. Addressed above. Additionally, Judge Zimmerman allowed Plaintiff to depose Resurgent on the issue of net worth.

**Dock #63**. December 1, 2011, Letter to Judge Zimmerman Regarding Brachfeld's Deficient Discovery Responses, and seeking supplemental responses. As a result of the discovery conference Defendants were ordered to supplement discovery (including the identity of collectors/fact witnesses such as Courtney Hileman, tax returns, etc).  Also see Docket #69 re same.

**Dock #100**.  Motion for Order Shortening Time to Compel Witnesses to Trial.  When

Defendants refused to stipulate and agree to appear and testify at trial, Plaintiff was again

forced to obtain a court order to address the situation.  Plaintiff's motion was granted, and the

Court ordered Erica Brachfeld and Jon Birdt to appear and testify *over* their objection.

**Dock #110**. Motion for Defendant to Comply With the Court's Pre-Trial Order and meet and

confer in person.  When Defendants failed to comply with this Court's Pre-Trial Order,

Plaintiff was again forced to obtain a court order to address the situation.  The in person meet

and confer session (that occurred at the Courthouse), led to settlement (which is obviously

one of the reasons the court requires such in the first place).

22. Additional responses to defendant's objections to specific time entries are attached as

**Exhibit 14.**

23. **Costs.** The costs incurred are compensable.  Subpoenas and witness fees to non-parties are

what's required to assure their attendance. See Fed. R. Civ. P. 45.  Furthermore, I was

required to purchase software, exclusively used to transfer a recording of a meet and confer

session form my phone to my computer, for submissions to Judge Zimmerman, as required

by his standing order.  Authority holds costs are also compensable. Finally, deposition

transcripts are costs for which Plaintiff is entitled reimbursement.  Plaintiff should not be

saddled with the costs necessitated by Defendants' unlawful acts.

24. Defendants' voluminous opposition brief required Plaintiff to expend considerable resources

establishing the fee award herein.

25. I have attached supplemental time records for the period May 26, 2012 to July 5, 2012,

which totals $16,800. (I am not requesting reimbursement for paralegal time for this period).

**Exhibit 15.**

26. Combined with the total in her moving papers ($181,583.00 Ronald Wilcox, and Paul H.

Nathan $35,070), plus the supplemental fees of $16,800 Ronald Wilcox, and Paul H. Nathan,

$1,500), the total attorney's fees requested are $234,953.  However, as mentioned in the briefing counsel agree to a 10% discount in a further exercise of billing judgment and to reduce argument regarding time spent, resulting in a sum of $211,457.70.

27. As noted in the briefing, counsel requests a 2.0 enhancement multiplier, brining the total request to $211,457.50 x 2.0 = $422,915.40.

28. Additionally, costs requested are $9,844.40.

29. Thus, Plaintiff requests the total sum $432,759.80.


Executed at San Jose, CA, on July 6, 2012.

/s/Ronald Wilcox
Ronald Wilcox
Attorney for Plaintiff