UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>RESURGENT CAPITAL SERVICES, L.P., LVNV FUNDING, LLC, BRACHFELD LAW GROUP, P.C.,<br><br>    Defendants.<br>_____/ | No. C-11-1253 EMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>**(Docket No. 129)** |

Plaintiff Donna Garcia filed this action against Defendants Resurgent Capital Services, L.P., LVNV Funding, LLC, and Brachfeld Law Group, P.C., for violations the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788, *et. seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq*. After a year of litigation, on May 8, 2012, the parties settled Garcia's claims for $50,000 in favor of the Plaintiff plus reasonable attorney's fees and costs. *See* Order Vacating Trial (Docket No. 122). After settling the claims, the parties were not able to reach an agreement on attorney's fees and costs, leading Plaintiff to file the pending motion for attorney fees and costs (Docket No. 129). Having considered the motion, all papers that are related thereto, and the argument of counsel, the Court hereby **GRANTS** Plaintiff's motion in part.

## I. BACKGROUND

On March 15, 2011, Plaintiff Donna Garcia filed suit against Defendants Resurgent Capital Services, L.P., LVNV Funding, LLC, and Brachfeld Law Group, P.C., in response to what she

1  alleges were excessive debt collection efforts undertaken by the Defendants between 2004 and 2011.
2  Plaintiff's suit alleged the following causes of action: (1) violation of the Rosenthal Fair Debt
3  Collection Practices Act; (2) violation of the Fair Debt Collection Practices Act; (3) intrusion upon
4  seclusion; and (4) negligence. Compl. ¶¶ 58, 69, 75, 82 (Docket No. 1). The parties in this case
5  each filed several motions, took depositions, and generally prepared for a five-day jury trial before
6  settling Garcia's claims on May 8, 2012. The parties have agreed that Plaintiff is the "prevailing
7  party," and neither party disputes in their papers that as the prevailing party, Plaintiff is entitled to
8  attorney's fees under both the federal and state statutes underlying her claim. *See* Plaintiff's Motion
9  (Docket No. 129) at 7; *see also* Def.'s Opposition (Docket No. 140) at 2. However, reaching an
10 impasse on the issue of attorney's fees, the Plaintiff filed her pending motion seeking $216,653 in
11 fees less a 10% reduction and $9,844.40 in costs. Plaintiff's Motion at 6-7. Plaintiff also requests a
12 2.0 multiplier to the fee award, and an additional $18,300 in attorney's fees for bringing this motion.

## II. DISCUSSION

Both the FDCPA and the RFDCPA contain fee-shifting provisions. The FDCPA provides in relevant part that "any debt collector who fails to comply with any provision of this title [15 U.S.C. § 1692 *et seq.*] with respect to any person is liable...in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Similarly, the RFDCPA provides in relevant part that, "[i]n the case of any action to enforce any liability under this title, the prevailing party shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor . . . ." Cal. Civ. Code § 1788.30(c).

The Ninth Circuit has adopted the use of the "lodestar" method for determining reasonable attorney's fees in FDCPA cases. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001); *see also PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000) ("the fee setting inquiry in California ordinarily begins with the 'lodestar'"). Under the lodestar method, a reasonable attorney's fee is determined by multiplying the number of hours reasonably expended on the litigation by an attorney with the attorney's reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S.

2

424, 433 (1983). In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that the hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." *Id*. at 895. "The burden is on the plaintiff to produce evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (internal quotations omitted). As to the number of hours reasonably expended, a fee applicant "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

A. <u>Reasonable Hourly Rate</u>

In assessing a reasonable hourly rate, courts consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 and Fn. 11 (1984). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). Plaintiff asserts that the fee award should be based upon the following rates: (1) Ronald Wilcox –$400/hour; (2) Paul Nathan – $300/hour. Defendants counter that Wilcox's work should be compensated at $300/hour and that Nathan's time should be compensated at $190/hour. Having considered evidence submitted regarding prevailing market rates in this forum, the Court concludes that the hourly rates sought by Plaintiff for Wilcox and Nathan are reasonable.

///
///
///
///

1. Ronald Wilcox

In support of Wilcox's requested rate of $400/hour, Plaintiff submits Mr. Wilcox's own declaration and the declarations of local attorneys Scott Maurer and Fred Schwinn, and attorney's fee expert Richard Pearl.[1] *See* Wilcox Decl. (Docket No. 130). Wilcox has been a licensed attorney in California since 1995 and has significant experience in consumer and bankruptcy cases. Wilcox Decl. ¶¶ 5-6, 13-15 (listing significant state and federal FDCPA cases in which Wilcox was counsel). He has been co-counsel in numerous successful FDCPA cases, and has billed an hourly rate of $400 for all legal services since June 1, 2011. Wilcox Decl. ¶¶ 15, 17. Richard Pearl's declaration attests that Wilcox's hourly rate is consistent with that of attorneys of comparable experience in the San Francisco Bay Area, and submits tables of attorney's fee awards showing rates based on years of experience in various Northern District cases from 2010-11 in which similar services were rendered. Pearl Decl. (Docket No. 131) ¶ 9. Wilcox's rate falls within the range of rates granted for attorneys of comparable experience in cases cited by Pearl.[2]

Defendants do not offer any evidence to show why the prevailing market rates in this community are lower than what Wilcox has claimed, but assert nonetheless that Wilcox should be compensated at the reduced hourly rate of $300. Def.'s Opposition at 5, 14. This proposed reduction is unreasonable given the lack of any supporting evidence, as well as Wilcox's own rate history showing that he has received attorney's fees awards at $350 per hour in previous FDCPA cases. *See, e.g.*, *Hunt v. Imperial Merchant Services*, No. C-05-04993 DMR, 2010 WL 3958726 (N.D. Cal. Oct. 7, 2010) (awarding $350/hour to Wilcox for services performed up to August 2010); *Carizzossa v. Legal Recovery Services*, 2011 WL 1674964 (N.D. Cal., May 3, 2011) (awarding $350/hour for services performed up to December 2010). The Ninth Circuit has noted that "in

---

[1] Scott Maurer is the Supervising Attorney at Santa Clara University's Alexander Community Law Center clinic; Fred Schwinn is a Northern California FDCPA attorney; Richard Pearl is an expert on California attorney's fees and author of *California Attorney Fee Awards*.

[2] Wilcox also submits the U.S. Consumer Law Attorney Fee Survey Report, indicating a median attorney fee rate of $412 for an attorney in California with thirteen years of experience. Wilcox Decl. Ex. 1. While the relevant community for purposes of determining the prevailing market rate is the "forum in which the district court sits," *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), this report reinforces the reasonableness of Wilcox's rate considering his four additional years of experience and the high cost of living in the San Francisco Bay Area.

4

determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services." *Camacho*, 523 F.3d at 981 (citing *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003) (holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed). Wilcox explains he raised his rates on June 1, 2011 from $350 to $400, and his records show that he has billed at his lower rate for all work done on this case before June 1, 2011. Wilcox Decl. 9. Considering the two additional years of experience since his 2010 rate awards, as well as the declarations supporting Wilcox's rate, the Court concludes that $400.00/hour is consistent with the prevailing market rates in the San Francisco area for an attorney of Wilcox's experience and reputation.

2. Paul Nathan

In support of Nathan's requested hourly rate of $300, Plaintiff submits Nathan's own declaration and the declaration of an attorney named David J. Beauvais. Nathan graduated from law school in 2007 and has practiced law in California since 2009. Nathan Decl. (Docket No. 134) ¶¶ 5-6. He has represented consumers in San Mateo County Superior Court and San Francisco County Superior Court, and bills his local Bay Area clients the same rate of $300/hour requested in this fee motion. *Id.* ¶ 13. The declaration of Beauvais attests that, based on Beauvais' personal knowledge of the hourly rates charged by attorneys in the San Francisco Bay Area, the market rate for litigating a case with issues of similar difficulty and complexity would range from $225 to $500 or more per hour, "depending on the skill, experience and reputation of the attorney." Beauvais Decl. (Docket No. 135) ¶¶ 10-11. Beauvais states that Nathan's hourly rate of $300 is reasonable given Nathan's litigation experience, and that he (Beauvais) is familiar with Nathan's legal ability since they worked as co-counsel on the civil rights case *Golin v. Allenby, et al.* San Mateo Superior Court Case No.: CIV 507159. *Id.* ¶¶ 12, 14. Nathan's hourly rate was billed at $300 in the *Golin* case. *Id.* ¶ 14. Beauvais himself has thirty-three years of experience and charges $500 an hour. *Id.* ¶¶ 4, 9.

Defendants argue that Nathan's hourly rate is excessive for an attorney who began legal practice in 2009 and is inexperienced FDCPA cases, and insist that Nathan's fee award should be reduced $190 per hour, which they claim is reasonable compensation for a third-year attorney.

Def.'s Opposition at 5. Defendants have not cited any cases or evidence other than their asserted personal experience to show that Nathan's rate should be $190 per hour. Dalby Decl. ¶ 29. In contrast, the Pearl Declaration submitted by Plaintiff cites several Northern District cases supporting the reasonableness of Nathan's request. Pearl Decl. ¶ 9; *see e.g.*, *Armstrong v. Brown*, 805 F. Supp. 2d 918 (N.D. Cal, Aug. 8, 2011) (awarding and hourly rate of $275-85 to second year associates, and $325 to fourth year associates); *San Francisco Baykeeper v. West Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) (awarding an hourly rate of $300 to a public environmental litigation attorney with two years of experience). Nathan's requested rate is consistent with other hourly rates approved by courts in this district for attorneys of comparable experience. It is also significant to note that Nathan is not Wilcox's associate and was added to this case as co-counsel based on his (Nathan's) trial experience in San Francisco. Nathan Decl. ¶ 13; Plaintiff's Reply at 3. Considering the declarations, the rates granted by other courts in this district, and Nathan's prior trial experience, the Court concludes that Nathan's requested rate of $300/hour is consistent with the prevailing market rates in the San Francisco area for an attorney of Nathan's experience and reputation.

        3.      <u>Paralegals</u>

Plaintiff requests that hourly rates for Wilcox's legal assistants Carmel Payne and Liliana Alba-Bermejo of $125 and $100, respectively, be applied in calculating the fee award in this case. Wilcox Decl. ¶ 22. Payne has twelve years of experience in the legal field, and Alba-Bermejo has two, and the requested rates equal their current hourly rates as billed by Wilcox. *Id.* These hourly rates for paralegals are comparable with those granted by other district courts in similar recent cases. *See, e.g.*, *Jamal v. Thompson & Associates, P.C.*, No. C-09-04249 MHP (BZ), 2010 WL 678925 at * 4 (N.D. Cal. Feb. 25, 2010) (determining that $125 is a reasonable hourly rate for a paralegal on an FDCPA case); *Salamon v. Creditors Specialty Services, Inc.*, (N.D. Cal. Jan. 27, 2012) (awarding fees including paralegal work at $125 an hour). Defendants do not challenge these rates. Thus the Court finds these rates reasonably reflect the market value of the legal assistants' services in the San Francisco Bay Area.

B.   Reasonable Number of Hours

For the purposes of calculating the 'lodestar' figure, the Court has discretion in determining the number of hours reasonably expended on this case. *See Chalmers v. City of Los Angeles*, 796 F.2d 1221; *see also Hensley*, 461 U.S. at 437 (stating that a district court has discretion in determining the amount of a fee award which is "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters"). The fee applicant bears the burden of "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433, 437. Reasonably expended time is generally time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). To this end, the applicant must exercise "sound billing judgment" regarding the number of hours worked, and a court should exclude from a fee applicant's initial fee calculation hours that were not "reasonably expended," such as those incurred from overstaffing, or "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.

Plaintiff puts forward the following figures for calculating the lodestar for work expended in this case:

|  | Hours | Hourly Rate | Amount |
| --- | --- | --- | --- |
| Ronald Wilcox (Feb. 2011 - May 31, 2012) | 22 | $350 | $7,700 |
| Wilcox (June 1, 2011 - June 1, 2012) | 425.3 | $400 | $170,120 |
| Paralegal Payne | 5.3 | $125 | $662.50 |
| Paralegal Alba-Bermejo | 31 | $100 | $3,100 |
| **Wilcox and Assoc. Totals** | 445.3 | --- | **$181,582.50** |
| Paul Nathan | 115.7 | $300 | $34,710 |
| Nathan (travel for depositions) | 2.8 | $75 | $210 |
| **Nathan Totals** | 118.5 | --- | **$34,920** |

7

*See* Plaintiff's Motion at 6. Both Wilcox's and Nathan's declarations in support of this fee motion attest that the hours described above "were reasonably necessary for the prosecution of Ms. Garcia's claims," and each claimant has included an exhibit providing copies of their "time records for time expended in litigation." *See* Wilcox Decl. ¶¶ 38-40 and Ex. 2, 3; Nathan Decl. at 4 and Ex. 1.

Defendants allege that 370.64 hours of Wilcox's billed hours, and 110.3 of Nathan's hours were excessive, duplicative, or unnecessary and that this time should be deducted from the total number of hours factored into the lodestar. *See* Dalby Decl. Ex. C (summarizing analysis of Plaintiff's attorneys' billing records). Specifically, Defendants argue that the following should not be compensated: (1) unnecessary discovery; (2) overstaffing resulting in duplicative billing where both attorneys worked on a motion or attended a proceeding; (3) block billed and other unidentifiable entries; (4) communications with unidentified colleagues; and (5) failure to negotiate in good faith, prolonging litigation. It is the burden of the party opposing a fee motion to "point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*, 163 Cal. App. 4th 550, 564 (2008). "General arguments that the fees claimed are excessive, duplicative, or unrelated do not suffice." *Id.* Each of the arguments put forward by the Defendants is considered below to the extent that they articulate a specific challenge and cite to specific evidence.

1. Relevancy of Discovery and other Investigation

Defendants first argue that the 88.2 hours expended on depositions regarding calls and practices of LVNV/Resurgent between 2006 and 2007 should be excluded because events from that period are not actionable as a result of the statutes of limitations under the FDCPA and RFDCPA, and thus were unnecessary to prosecute the claims brought by Plaintiff in this case. Def.'s Opposition 6-7, Dalby Decl. Ex. C (summarizing analysis of Plaintiff's attorneys' billing records). Plaintiff argues that these depositions were necessary to show that Defendant Resurgent had knowledge of her five cease and desist letters, to determine the number of calls placed to Plaintiff, and to establish Defendants' practice of handing debts to different collection agencies. Plaintiff's Reply at 6 -8.

The Court notes that evidence such as that sought by the Plaintiff can be used to assess the nature and frequency of a party's violation of the FDCPA, as well as judge whether non-compliance with the statue was intentional. *See* 15 U.S.C. 1692k. As this Court stated in *Joseph v. J.J. Mac Intyre Cos.*, "even if the statute of limitations were to bar liability for conduct outside the limitations period, evidence of pre-limitations period calls would likely be admissible to show background, to establish a foundation for other evidence, as well as to show Plaintiff's vulnerable state of mind and establish the extent of general damages." *Joseph v. J.J. Mac Intyre Cos.*, 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003). Indeed, as this Court noted in its Order denying Defendants' Motion for Summary Judgment (Docket No. 96) in this case, the fact that "Plaintiff cannot obtain relief for any violations occurring in 2006 and 2007 *does not mean such conduct is irrelevant to her timely claims stemming from Defendant's conduct in 2009-2010.*" *Id*. at 7 (emphasis added). Because they were related to the prosecution of Plaintiff's claims, the Court finds that the time spent on these depositions was reasonably expended.

In addition, Defendants argue that the 15.1 hours spent on a discovery dispute regarding Defendants' financial records should be deducted from the 'lodestar' figure in light of an order from this Court stating that these documents need not be disclosed. Def.'s Opposition at 8. The order in dispute granted in part Plaintiff's Motion to Compel financial discovery, ordering Defendants to respond to request for document production ("RPD") #10 and interrogatory #8, and denying request for document production #11. Order Granting in Part and Denying in Part Plaintiff's Request for Discovery (Docket No. 38). RPD #10 requested "[d]ocuments sufficient to identify the net worth of Defendant including but no [sic] limited to financial statements (i.e. balance sheet, income statement, etc)," while RPD #11 requested "Defendant's federal and state income tax returns, including schedules, for the past three years." Joint Letter Regarding Discovery Dispute (Docket No. 33) at 1 Fn. 1. From the language of the contested Order and RPD #10, Defendants' contention that Plaintiff unreasonably spent time attempting to obtain financial documents is not supported.[3]

---

[3] In response to Plaintiff's letter to Judge Zimmerman requesting an order that Defendants produce financial statements to establish net worth (Docket No. 60), Defendants stated that "Judge Zimmerman explained that he had spoken with Judge Chen considering Judge Chen's intent concerning his discovery order...was that Defendants would provide their net worth information but

1  RPD #10 clearly requires production of documents sufficient to identify the net worth of
2  Defendants, and Defendant Brachfeld eventually did produce tax returns in response to Judge
3  Zimmerman's later discovery order. *See* Second Discovery Order (Docket No. 69); Plaintiff's Reply
4  at 9. Based on the language of the discovery request and the order, Plaintiff's counsel acted
5  reasonably in pursuing compliance with this Court's order and that the time spent on this issue was
6  not excessive. Therefore, the Court declines Defendants' invitation to deduct the relevant 15.1 hours
7  from the lodestar calculation.

### 2. The Use of Two Attorneys

Defendant argues that the attendance of two attorneys at some depositions and hearings was unnecessary and that Plaintiff's counsel excessively billed for work on the same motions, such as the Plaintiff's Opposition to the Motion for Summary Judgment. Def.'s Opposition at 9-10. Specifically, Defendants show that Wilcox and Nathan both billed for attending four depositions, for arranging and attending a 'Focus Group' meeting, and for their joint appearance at a settlement conference, a status conference, and two pre-trial conferences. *Id.* at 10. Defendants also argue that it is unreasonable that Wilcox spent 20 hours working on Plaintiff's Opposition to the Motion for Summary Judgment considering his experience, and that Nathan billed 10 additional hours working on the same brief. Def.'s Opposition at 9-10. As this Court noted last year in *Stonebrae v. Toll Bros*, "[w]hile it is not uncommon to have co-counsel in litigation, and fees are commonly awarded to multiple attorneys, counsel seeking fee awards bear the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable inefficiencies and duplicative efforts engendered by multiple counsel." *Stonebrae v. Toll Bros.*, No. C-08-0221 EMC, 2011 WL 1334444 at *12 (N.D. Cal. April 7, 2011). An examination of the billing records shows that a significant portion of the hours alleged to be duplicative were spent conducting legal research, drafting motions, and preparing for trial. It is not unusual for two attorneys to work together on such activities, especially when they are working on different components of a brief or working together on a

---

that documents relating to their net worth did not have to be produced. Only if there was some question raised concerning the veracity of Defendants' net worth information, would the Court consider the production of documents relating to that information." Letter from David I. Dalby responding to plaintiff's attorney's letter (Docket No. 61) at 2.

10

motion. *See, e.g.*, *Chabner v. United Omaha Life Ins. Co.*, No. C-95-0447 MHP, 1999 WL 33227443 (N.D. Cal. Oct. 12, 1999) ("Common sense dictates that a single task can be broken down over several discrete time periods and that a number of people might contribute to one end product."). Furthermore, given Plaintiff's ultimate success in defeating Defendant's Motion for Summary Judgment and this Court's subsequent Order to Show Cause (Docket No. 97) issued to the Defendants for bringing its motion without sufficient evidence, the time spent by Plaintiff's attorneys appears to have been properly expended.

      The Court, however, is not persuaded that the presence of two attorneys was necessary at some of the depositions and proceedings identified by the Defendants. Plaintiff argues that Nathan's presence at these proceedings was necessary because Nathan needed to learn the intricacies of the case and would likely examine several of the witnesses at trial. Plaintiff's Reply at 10. Plaintiff's attorneys also note that they exercised billing judgment and controlled for duplication and inefficiency by reducing their requested fee award by 10 percent. *Id.*

      In fee motions, a Court may exercise its discretion to reduce the lodestar amount in situations where it finds that a case was overstaffed and working hours were duplicative. *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Even though Plaintiff has taken a 10 percent reduction from the entire lodestar figure, the records indicate that a portion of Nathan's time in particular was spent on familiarizing himself with the case, and the Court finds that this time has not been adequately reduced in the Plaintiff's initial lodestar figure. *See Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) (holding that a court must independently review the record in order to substantiate the accuracy and adequacy of a plaintiff's suggested percentage reduction); *see also Oskar Systems, LLC v. Club Speed Inc.*, No. CV 09-3854 AHM (SHx), 2010 WL 4235812 (C.D. Cal. Oct. 20, 2010) (reducing fees for time spent by counsel's "getting up to speed" by 15% because "there was an indisputable overlap of time and ensuing inefficiency" even where prior counsel was replaced). Court finds Nathan's presence at the depositions, hearings, and focus group meeting cited by Defendants was not wholly necessary, and accordingly reduces Nathan's time in the lodestar figure by 28 hours.

1       3. <u>Block-Billed and Unidentifiable Billing Entries</u>

2       126.6 hours billed by Wilcox and Nathan are in the form of block bills, or entries listing more than one task and the total time spent on those tasks. *See* Dalby Decl. Ex. C. Defendants argue that because block billing makes it impossible for a court to ascertain the length of time it took Plaintiff's counsel to perform specific tasks billed in those blocks of time, fees for the block billed hours should not be awarded. Def.'s Opposition at 13.

      Block-billing is not inappropriate *per se* when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJP-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotations omitted); *see also Hensley*, 461 U.S. at 433 (noting that although the fee applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended"). As this Court noted in *Stonebrae v. Toll Bros.*, "[b]lock-billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award." *Stonebrae*, 2011 WL 1334444 at *9; *see also Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 WL 472308 at *3 (N.D. Cal. Jan. 29, 2002) (holding that blocked-billing entries supported the reasonableness of hours expended where attorneys had logged their hours daily to the tenth of an hour and described the nature of their activities).

      The billing records show that the instances of alleged block-billing contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable. For example, one of Wilcox's entries from June 23, 2011, for 0.40 of an hour of work contains the following information: "REVD signed stip to mediate from Brachfeld, revised stip, efiled, courtesy copies to court (mail and email), with CMC stmt (mail); email to ADR Unit/Sheila re Monday phone confer." Wilcox Decl. Ex. 2. at 5. Nathan's disputed entries are also similarly detailed, and have been supplemented with further explanations supporting the necessity of certain tasks questioned by Defendants in the block-bills. *See* Nathan Supp. Decl. (Docket No. 145) Ex. A. Because the block-billed entries are sufficiently detailed to allow the Court to determine the

1    reasonableness of time expended, the Court finds that Plaintiff's counsel have adequately

2    documented their hours such that no reduction is necessary on this basis.[4]

3            4.        <u>Unidentified Communications</u>

4    Defendants argue that Wilcox's entries totaling 19.6 hours for communicating with

5    unidentified "colleagues" mostly through email do not provide a basis for the Court to determine the

6    reasonableness or necessity of these communications, and consequently should be excluded from the

7    lodestar calculation. Def.'s Opposition at 12; Dalby Decl. Ex. C. Plaintiff argues that these

8    communications were necessary to obtain evidence of Defendants' unlawful conduct in other cases

9    because a consumer in an FDCPA case may present such evidence "to show intent, absence of

10   mistake, malice, willfulness, and reprehensibility." Plaintiff's Reply at 11 (citing *McCollough v.*

11   *Johnson, Rodenburg, Lauinger*, 637 F.3d 939 (9th Cir. 2011)). The billing record entries in which

12   Plaintiff's counsel communicates with unidentified colleagues all contain some information

13   regarding the subject matter of the communications. *See, e.g.* Wilcox Supp. Decl. Ex. B at 1, 2, 3

14   (listing billing entries such as "3/7/11; Email to COLLEAGUE re Brachfeld depo, complaints;

15   0.10," "6/23/11; REVD email from COLLEAGUEs re LVNV, insurance; 0.10," "8/4/11; REVD

16   email from COLLEAGUE re Brachfeld & Associates suit v. his client in 2008, replied (attorney

17   work product); 0.10").

18   As noted above, a fee claimant adequately supports the number of hours claimed by "listing

19   his hours and identifying the general subject matter of his time expenditures." *Fischer*, 214 F.3d at

20   1121. Accordingly a fee claimant cannot be penalized for redacting confidential information in his

21   time records so long as it "do[es] not impair the ability of the court to judge whether the work was

22   an appropriate basis for fees." *Democratic Party of Washington State v. Reed*, 388 F.3d 1282, 1286

23   (9th Cir. 2004). Because there are sufficient details in the disputed entries regarding the subject

24   matter of these communications, the Court is able to assess the reasonableness of such

---

[4] Defendants also claim that Wilcox has 4.2 hours total of unidentifiable billing entries for 0.10 and 0.20 hours. Dalby Decl. Ex. C. However, other than being short, there does not appear to be anything unreasonable about these entries as the task for each entry is specified. *See, e.g.* Wilcox Supp. Decl. Ex. B at 4 ("8/20/2011; RESEARCH re Jennifer Cohen; 0.10" "8/29/11; RESEARCH re new appellate court decisions, reversing trial court re consumer debt; 0.20").

United States District Court

For the Northern District of California

1  communications without reaching Plaintiff's arguments regarding privilege; a review of the record
2  shows that these entries appear reasonable and related to the FDCPA claims raised in this case.
3  Because there is sufficient documentation of the almost twenty hours in question, the Court finds
4  these hours to be reasonably included in the lodestar calculation.

### 5. Settlement Negotiations

Defendants contend that Plaintiff's counsel did not act in good faith during settlement negotiations and that their unreasonable negotiation tactics prolonged litigation. Def.'s Opposition at 19. Defendants argue that the Court should factor in this unreasonable behavior when considering the reasonableness of Plaintiff's claimed time spent in litigation. *Id.* Unsurprisingly, Plaintiff's attorneys counter that Defendants "grossly mischaracterize verbal settlement discussions" in support of their argument, and, in turn, argue that Defendants' settlement offers were "all over the map," and offer written evidence that two weeks before the ultimate settlement of $50,000 plus fees and costs, Defendants offered only $20,000 in settlement. Plaintiff's Reply at 15. *See also* Nathan Supp. Decl. Ex. C. While courts have reduced overall lodestar figures for delays resulting from excessive settlement demands, *see Rubenstein v. National Recover Agency, Inc.*, No. 2:11-cv-06680-ODW (SHx), 2012 WL 1425144 (reducing the lodestar by 20% for Plaintiff's unreasonably high settlement requests for prolonging litigation and increasing fees), in this case there is insufficient evidence to conclude that either parties' settlement tactics were unreasonable. Considering the conflicting perspectives of the settlement proceedings on both sides, and the lack of evidence on the record of bad faith, Court rejects Defendants' contention that Plaintiff's fee award should be reduced on this basis. The Court is reluctant to delve into the specifics of what normally is confidential settlement discussions absent a stronger showing of extreme or unreasonable conduct.

### 6. Total Reasonable Hours

Based on the hourly rates and hours stated above, the initial lodestar figure in this case amounts to $216,502.50. This figure includes 22 hours billed by Wilcox at $350, 425.3 hours billed by Wilcox at $400, $3762.50 in paralegal hours, 115.7 hours billed by Nathan at $300, and 2.8 hours for Nathan's travel time billed at $75. Less the 28 duplicative hours from Nathan's time, and the

14

10% billing judgment reduction exercised by Plaintiff, the adjusted initial lodestar figure equals **$187,292.25.**

C. <u>Adjustment to Lodestar</u>

There is a strong presumption that the lodestar figure is a reasonable fee award. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). In rare circumstances, a court may adjust the lodestar upwards or downwards to account for other factors – as enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) – which are not otherwise subsumed within the lodestar.[5] *See Camacho*, 523 F.3d at 978; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988) (same); *see also Woods v. Sunn*, 865 F.2d 982, 991 (9th Cir. 1988) (noting that many factors previously identified by courts as probative on the issue of reasonableness of a fee award are now subsumed within the initial calculation of the lodestar amount). In *Cunningham*, the Ninth Circuit emphasized that the *Kerr* factors subsumed in the lodestar "may not act as independent bases for adjustments of the lodestar. . . . [A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion."[6] *Cunningham*, 879 F.2d at 487. In short, "[i]n exceptional cases, such deviation may be proper, but the court must explain why the results of the lawsuit are not adequately factored into the lodestar." *Id.* at 489. In

---

[5] The *Kerr* court listed twelve factors that may be considered in revising the lodestar figure for a fee award. They are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc*., 526 F.2d at 70.

[6] "[The] *Kerr* factors that are not subsumed may support adjustments in rare cases, provided the district court states which factors it is relying on and explains its reasoning." *Cunningham*, 879 F.2d at 487.

this case, neither party has shown that an adjustment should be made to the lodestar either upwards or downwards, as discussed below.

### 1. Proportionality of Fees to Plaintiff's Recovery

Defendants argue that Plaintiff's attorney's fees are unreasonably large in comparison to Plaintiff's recovery of $50,000 and that the lodestar should be reduced to be in proportion to the amount recovered. Def.'s Opposition at 3-4. While the "results obtained" are ordinarily factored into the lodestar, the Supreme Court has stated that reductions may be appropriate where the plaintiff achieves only partial or limited success. *Hensley*, 461 U.S. at 436. However, courts have been reluctant to reduce fee awards on the basis of a low monetary recovery in FDCPA cases since damages are capped at $1,000, and have held that a $1,000 recovery does not render a plaintiff's success "limited." *See Defenbaugh v. JBC & Associates, Inc.*, No. C-03-0651 JCS, 2004 WL 1874978 (N.D. Cal. 2004) (rejecting the argument that attorney's fees should be reduced because they are disproportionate to Plaintiff's recovery of $1000; awarding $46,496.32 in fees and cost); *see also Gradisher v. Check Enforcement Unit*, No. 1:00-CV-401, 2003 WL 187416 (W.D. Mich. Jan 22, 2003) (awarding plaintiff who recovered $1,000 in statutory damages attorney's fees of $69,872.00 and costs of $7,808.44).

In this case, Plaintiff received fifty times the statutory limit from the settlement as a result of her counsels' efforts. Thus her recovery cannot be said to be partial or limited; rather, she obtained a relatively excellent result. Moreover, in this case, the disproportionality between the Plaintiff's recovery and fee award is no greater than that in *Defenbaugh* and *Gradisher*. It is not uncommon for a fee award to exceed the damages award. The recovery in this case provides no basis for reducing the presumably reasonable lodestar. Furthermore, the FDCPA provides for mandatory fee awards to the prevailing party because "congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho*, 523 F.3d at 978 (citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)). This purpose would be frustrated if attorney's fees were limited such that attorneys working on FDCPA cases could not recover fees out of proportion to the $1000 statutory limit on damages. Thus, the Court declines Defendants' invitation to reduce the lodestar figure based on Plaintiff's recovery.

2. <u>Applicability of Multiplier</u>

Plaintiff argues that a 2.0 multiplier should be applied to the lodestar to account for the contingent nature of this case. Plaintiff's Reply at 13. Under the FDCPA, fee awards from fee-shifting statutes may not be enhanced based on a risk of non-payment from a contingency fee agreement. *City of Burlingame v. Dague*, 505 U.S. 557, 563 (1992); *see also Perdue v. Kenny A.*, 130 S.Ct. 1662, 1667 (2010) ("[T]he lodestar includes most, if not all, of the relevant factors constituting a reasonable attorney's fee."). California courts, however, have expressly rejected the rule against fee enhancements based on contingency announced in *Dague*, and have affirmed the use of lodestar adjustments for factors such as contingent risk or extraordinary skill. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1137-38 (2001). Under the California standard, the court's discretion in awarding attorneys fees is "to be exercised so as to fully compensate counsel for the prevailing party for services reasonably provided to his or her client." *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 395 (holding that failure to consider that payment for the case was deferred for four years in discussion of whether a multiplier was warranted was an abuse of discretion). While California courts have applied multipliers more liberally, there is still a rule against the "double-counting" of factors for a fee enhancement that were already considered as a part of the reasonable hourly rate for the lodestar. *Ketchum*, 24 Cal. 4th at 1139. Unlike *Horsford*, Plaintiff's counsel had only litigated this case for a year. Further, although Plaintiff argues that her counsel had to forego other potential clients to prepare for trial and risked receiving no fee at all since this case was taken on a contingent basis, Plaintiff's Motion at 14, this constellation of facts would be true of almost all FDCPA and RFDCPA cases, and, without more, is not a convincing argument for a multiplier in light of the federal courts' strong presumption of reasonableness of the lodestar figure.

Under both California and federal law, the decision to award a fee enhancement is within the discretion of the Court, and the party seeking a fee enhancement bears the burden of proof of showing that the lodestar figure is unreasonably low. *Ketchum*, 24 Cal. 4th at 1138; *Perdue*, 130 S.Ct. at 1667. Plaintiff's request for a multiplier here amounts to a categorical rejection of the reasonableness of an initial lodestar figure in all fee applications where a case was taken on a

contingency fee basis. Such an outcome cannot possibly be the law in California if the lodestar figure is to be "adjusted, based on consideration of factors *specific to the case*, in order to fix the fee at the fair market value for the legal services provided." *Ketchum* at 1134 (emphasis added). On its face, Plaintiff's blanket appeal for an adjustment simply because this case was taken on a contingency fee basis is at odds with the California Supreme Court's instruction that adjustments be tied to the specifics of the case under consideration. Further, while the Plaintiff obtained a relatively excellent result, the unenhanced lodestar already greatly exceeds the recover. Finally, Plaintiff fails to explain with any specificity why an enhancement of 2.0 times the lodestar would be appropriate here. It is the Plaintiff's burden to show that the lodestar figure does not adequately "approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at 1138. Without more of a showing that a fee multiplying enhancement is necessary in *this* case, Plaintiff fails to meet her burden and as such the Court declines to apply a multiplier.

D.     Reasonableness of Costs

The FDCPA and RFDCPA allow a prevailing plaintiff to recover "the costs of the action." *See* 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c). Plaintiff seeks $9,844.40 in costs. Defendants objects to over half of these costs, arguing against the validity of some depositions and their related costs, and the compensability of the costs of transcripts, subpoenas, and other items without citing any authority in this Circuit as to why these "costs" are not recoverable under the statutes at issue. *See* Def.'s Opposition at 18. Courts in this district have held in FDCPA cases, "expenses that are generally charged to paying clients may be awarded, even though they are not normally taxable as costs." *See Defenbaugh v. JBC & Associates, Inc.*, No. C-03-0651 JCS, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) (granting postage and messenger costs routinely billed to paying clients). Wilcox has provided documentation to support his costs. *See* Wilcox Decl. Ex. 2, 3. Even the charge of $19.94 for software purchased for Wilcox's iPhone in order to transfer the recording of a meet and confer session to a computer is allowable as part of Plaintiff's cost recovery, given courts' treatment of other computer related expenses that make legal practice more efficient. *See United Nuclear Corp. v. Cannon*, 564 F. Supp. 581, 583 (D.R.I. 1983) (costs for using LEXIS

legal research software compensable in fee award because of the efficiencies realized through its use). Plaintiff's cost accounting seems reasonable and well-documented, and as such the Court awards Plaintiff's full costs of **$9,844.40.**

E. <u>Fee Motion</u>

Finally, Plaintiff seeks an additional $18,300 in fees for her attorneys' time spent on this motion. In this Circuit, plaintiffs may recover attorney's fees for time reasonably expended on a motion for attorney's fees and costs. *Jordan,* 815 F.2d at 1263-64. On this fee motion, Wilcox seeks to bill 42 hours of work while Nathan bills only 5. Wilcox. Supp. Decl. (Docket No. 144) Ex. 15; Nathan Supp. Decl. (Docket No. 145) Ex. A. Plaintiff's counsel has again agreed to a 10% discount in a further exercise of billing judgment, which reduces the total amount sought for fees on this motion to $16,470. Wilcox. Supp. Decl at 11. Considering Wilcox's significant past experience in litigating FDCPA cases and his experience filing numerous other motions for attorney's fees, the billed amount of 42 hours seems reasonable, as does Nathan's billing of five hours for his work on this motion, given his relative lack of experience in FDCPA cases.

### III. <u>CONCLUSION</u>

For the reasons stated above, this Court awards Plaintiff reasonable attorney's fees and costs in the amount of **$213,606.65.** This amount consists of $187,292.25 in attorney's fees and $9,844.40 in costs requested in the initial fee motion, and $16,470 in additional attorney's fees incurred by Nathan and Wilcox in bringing this motion.

This order disposes of Docket No. 129.

IT IS SO ORDERED.

Dated: August 30, 2012

_____
EDWARD M. CHEN
United States District Judge